873 P.2d 1302

**STATE of Arizona, Appellee,**

v.

**David Scott DETRICH, Appellant.**

**No. CR–91–0071–AP.**

Supreme Court of Arizona,
En Banc.

May 5, 1994.

Grant Woods, Atty. Gen., Phoenix, by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Eric J. Olsson, Tucson, for appellee.

John M. Sando and David T. Hardy, Tucson, for appellant.

## OPINION

MOELLER, Vice Chief Justice.

### STATEMENT OF THE CASE

Defendant, David Detrich, was convicted by a jury of first degree murder, kidnapping, and sexual abuse. He was sentenced to death for murder, to 21 years for kidnapping, and to four years for sexual abuse, the latter two sentences to be served "consecutively" to the death sentence. This is an automatic appeal from the death sentence. A.R.S. § 13-4031 and Rules 26.15 and 31.2(b), Ariz. R.Crim.P. Defendant separately appealed the other two sentences. As discussed more fully below, we conclude that we have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. §§ 13-4031 and 13-4033, and our authority under Rule 31.20, Ariz.R.Crim.P.

Because we find reversible error in the trial court's failure to give a lesser included offense instruction on unlawful imprisonment, and because the jury may have used the greater offense of kidnapping as a predicate felony for felony murder, we reverse defendant's first degree murder and kidnapping convictions and remand for a new trial on those charges. We affirm defendant's conviction for sexual abuse.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 4, 1989, defendant and a co-worker, Alan Charlton, drove Charlton's car from Benson to Tucson. In Tucson, defendant and Charlton picked up the victim, E.S., a hitchhiker, hoping she might help them find some cocaine. With the victim's assistance, the three purchased some cocaine and then drove to the victim's home. There was evidence that all three were drinking excessively throughout the evening.

At the victim's home, defendant became incensed when he discovered he had purchased "bad drugs." According to Charlton and other witnesses at the scene (the victim's daughters and a friend), defendant directed his anger at the victim, claiming she now "owed" him. One witness overheard defendant threaten to kill the victim. Another witness overheard defendant tell the victim that they "were going to have sex ... [and that] they can either do it ... right there or they will do it his way, and they don't want to do it his way." At trial, Charlton acknowledged that defendant was so enraged at the time that he "might not have known what he was doing."

While several people ran for help, defendant forced the victim into Charlton's car and—with Charlton driving—the three fled before the police arrived. An eyewitness confirmed that defendant held the victim at knifepoint until they left.

According to Charlton, who was the state's key witness at trial, defendant held the knife to the victim's throat while they were driving, and began "humping" her. Charlton testified that he looked over at one point and saw that the victim's throat was slit from ear to ear. He also recalled that the victim made a gurgling response when defendant interrogated her about the name of the drug dealer. Although Charlton could not remember much of a struggle (he claims he was in and out of a drunken "blackout"), it was later determined that the victim had been stabbed

40 times. The half-naked corpse was found several days later in the desert on the outskirts of Tucson.

Soon thereafter, the police arrested Charlton and defendant. Defendant's first trial ended in a mistrial when a witness for the prosecution mentioned that defendant had invoked his rights at one point in the investigation. After a second trial, defendant was convicted of first degree murder and kidnapping. He was acquitted of sexual assault, but convicted of the lesser included offense of sexual abuse.

## ISSUES

Because of our disposition of the issues discussed in this opinion, we find it necessary to deal with only the following relevant issues:

### I. First Degree Murder and Kidnapping Convictions

Whether it was reversible error for the trial court to fail to give defendant's requested instruction on unlawful imprisonment, a lesser included offense of kidnapping.

### II. Sexual Abuse Conviction.

1) Whether the trial court committed fundamental error in excusing two potential jurors for cause.

2) Whether the trial court committed fundamental error in giving an instruction on flight.

3) Whether the state failed to prove Pima County was the proper venue for the sexual abuse conviction.

4) Whether defendant was subjected to double jeopardy.

## DISCUSSION

■ As a preliminary matter, we address the state's contention that we have no jurisdiction to hear some of defendant's arguments regarding the kidnapping and sexual abuse convictions. Relying on *State v.*

*Schaaf,* 169 Ariz. 323, 819 P.2d 909 (1991), the state argues we have no jurisdiction to hear defendant's arguments pertaining to his non-capital convictions because defendant's notice of appeal on those counts did not specify that he was appealing his guilt as well as his sentences. The state contends that defendant's automatic appeal encompasses only the capital conviction and death sentence. *See* Rule 31.2(b), Ariz.R.Crim.P.

Under the facts of this case, we disagree with the state's argument. In *Schaaf,* we limited our review to the automatic appeal of the capital conviction and death sentence because the defendant failed to file a notice of appeal despite being informed that "he would have to file a timely notice of appeal with regard to the other [i.e., non-capital] counts." 169 Ariz. at 326, 819 P.2d at 912. The defendant here, however, was informed by the trial court—or at least led to believe—that he *need not* file any separate notice of appeal. At sentencing the trial judge explained, "[s]ince the death penalty has been imposed in this case, an appeal will automatically be entered in you[r] behalf, counsel will be appointed to represent you, and the appeal will be made directly to the supreme court of this state." In addition to this affirmative advice, the trial court did *not* advise defendant "that failure to file a timely appeal [with regard to the non-capital counts] w[ould] result in the loss of the right to appeal," pursuant to Rule 26.11, Ariz. R.Crim.P. Therefore, under these facts, we conclude that it is appropriate to proceed with the appeals at this time, rather than relegate defendant to the delayed appeal process. *See* Rule 31.20, Ariz.R.Crim.P. and Rule 16(a), Ariz.R.S.Ct.[1]

### I. Failure to Give An Unlawful Imprisonment Instruction

Defendant contends the trial court committed reversible error in refusing his request to instruct the jury on unlawful imprisonment, a lesser included offense of the charged offense of kidnapping. He contends this error re-

---

1. Rule 31.2(b) was recently amended to provide that the automatic notice of appeal in a death penalty case "shall be sufficient as a notice of appeal by the defendant with respect to all judgments entered and sentences imposed in the case." The amended rule applies to all automatic notices of appeal filed on or after April 1, 1994.

quires reversal of his first degree murder conviction, as well as his kidnapping conviction. The murder case went to the jury on both premeditation and felony murder theories. The trial court did not follow the procedures suggested by earlier cases to determine whether the murder conviction was based on premeditation, felony murder, or a combination of both. *See State v. Lopez,* 163 Ariz. 108, 111, 786 P.2d 959, 962 (1990); *State v. Smith,* 160 Ariz. 507, 513, 774 P.2d 811, 817 (1989). Therefore, on appeal, we must assume that the verdict is based, at least in part, on a finding of felony murder. *State v. Schad,* 142 Ariz. 619, 621, 691 P.2d 710, 712 (1984).

On felony murder, two predicate felonies were alleged: kidnapping and sexual assault. The jury acquitted defendant of sexual assault, instead finding him guilty of the lesser included offense of sexual abuse, which is not a predicate felony for felony murder. Defendant argues the jury might also have acquitted him of kidnapping if it had been given the option of convicting him of the lesser included offense, unlawful imprisonment. Unlawful imprisonment, like sexual abuse, is not a predicate felony for felony murder.

■ Although defendant requested an unlawful imprisonment instruction, which the trial court refused to give, the state contends the defendant has waived the issue on appeal by failing to make a further record on this issue in the trial court. Rule 21.3, Ariz. R.Crim.P., provides that a party may not assign as error the failure to give an instruction unless the party objects before the jury retires to deliberate. If the record is incomplete, a party is precluded from raising any error on appeal regarding instructions. *See, e.g., State v. Whittle,* 156 Ariz. 405, 406, 752 P.2d 494, 495 (1988); *State v. Lucas,* 146 Ariz. 597, 604, 708 P.2d 81, 88 (1985); *but see State v. Flores,* 140 Ariz. 469, 474, 682 P.2d 1136, 1141 (App.1984).

The purpose of making a record is to give the trial court an opportunity to consider and rule upon the position advanced by the party. Here, defendant's reason for requesting an instruction on a lesser included offense was obvious. In Arizona, trial judges know that lesser included offense instructions must be given if requested and if supported by the evidence. *See* Rule 23.3, Ariz.R.Crim.P.; *State v. Vickers,* 159 Ariz. 532, 542, 768 P.2d 1177, 1187 (1989), *cert. denied,* 497 U.S. 1033, 110 S.Ct. 3298, 111 L.Ed.2d 806 (1990). Nothing would be added to the trial court's vantage point or to this court's review by a mechanistic recital in the record: "Your Honor, I object to the refusal to give the unlawful imprisonment instruction as it is a lesser included offense of kidnapping and is supported by the evidence." Because we consider the issue adequately preserved for appeal under the facts and circumstances of this particular case, it is unnecessary for us to consider or resolve whether it would be fundamental error to fail to instruct on a lesser included offense of a predicate felony in a capital felony murder case, even absent a request.

■ We turn, then, to the merits of the requested instruction. To determine whether there is sufficient evidence to require the giving of a lesser included offense instruction, the test is "whether the jury could rationally fail to find the distinguishing element of the greater offense." *State v. Noriega,* 142 Ariz. 474, 481, 690 P.2d 775, 782 (1984), *overruled on other grounds, State v. Burge,* 167 Ariz. 25, 804 P.2d 754 (1990). The distinguishing element between kidnapping and unlawful imprisonment is the perpetrator's state of mind, i.e., whether the unlawful imprisonment was accompanied with one of the enumerated intents set out in A.R.S. § 13–1304 so as to elevate the unlawful imprisonment to kidnapping. *See Lucas,* 146 Ariz. at 604, 708 P.2d at 88; *Flores,* 140 Ariz. at 473, 682 P.2d at 1140.

Defendant was charged with kidnapping with the intent to "inflict death, physical injury or a sexual offense on the victim." A.R.S. § 13–1304(A)(3). The jury rationally could have found that defendant lacked this requisite intent: the prosecution's chief witness conceded that defendant was so enraged during the ordeal he "might not have known what he was doing," and several witnesses testified that defendant had consumed a prodigious amount of alcohol. Indeed, the trial court instructed the jury on intoxication precisely because it concluded that defendant's

intoxication could negate specific intent on the part of the defendant.

■ Defendant was entitled to the instruction he requested on the lesser included offense of unlawful imprisonment. Because the jury may have used kidnapping as a predicate felony for felony murder, the trial court's failure to give defendant's requested instruction on unlawful imprisonment was reversible error on both the kidnapping and the murder count. Accordingly, we reverse defendant's kidnapping and murder convictions.[2]

## II. Sexual Abuse Conviction

■ Before addressing defendant's specific arguments, we note that the state did present evidence sufficient to convict defendant of sexual abuse. "A person commits sexual abuse by intentionally or knowingly engaging in sexual contact with any person fifteen or more years of age without consent of that person." A.R.S. § 13–1404. Witnesses testified they overheard defendant threaten to sexually assault the victim. Charlton testified that defendant began "humping" the reluctant victim after they left her home. This evidence is sufficient to support a finding of sexual abuse.

Because most of defendant's arguments focus on the kidnapping and murder convictions, we address here only those arguments that arguably might also apply to his sexual abuse conviction.

### A. Jury Selection Process

■ Defendant contends the trial court improperly dismissed two jurors in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Because defendant failed to object to these dismissals at trial, he waived all but fundamental error. Even assuming defendant's argument has relevance to the non-capital counts, absent some showing that the eventual replacement jurors were unfair or partial, we fail to see how these excusals—even assuming they were erroneous—could constitute fundamental error; they did not deprive defendant of a fair trial.

### B. Flight Instruction

Defendant also argues the trial court improperly gave an instruction on flight. Because defendant failed to object to the instruction at trial, he waived all but fundamental error. There was ample evidence at trial linking defendant to the sexual abuse. We fail to see how the flight instruction could constitute fundamental error. The flight instruction—even assuming it was improper—does not rise to the level of fundamental error.

### C. Venue

■ Although he did not raise the issue in the trial court, defendant now argues that the trial court lacked jurisdiction because the state failed to prove that the sexual abuse occurred in Pima County. A.R.S. § 13–109; *State v. Howe,* 69 Ariz. 199, 200, 211 P.2d 467, 468 (1949). We disagree. Venue may be proven by either direct or circumstantial evidence. *State v. Brierly,* 109 Ariz. 310, 324, 509 P.2d 203, 217 (1973). Here, there is sufficient circumstantial evidence from which venue may be inferred. Defendant met the victim on a Tucson street. He kidnapped her from her Tucson home. Her body was found on the outskirts of Tucson. Tucson is in Pima County, Arizona, a fact of which the trial court and this court can take judicial notice. *State v. Phillips,* 102 Ariz. 377, 380, 430 P.2d 139, 142 (1967). Absent some scintilla of evidence that defendant and Charlton drove the victim out of the county before sexually abusing her, we feel it is fair to infer that the sexual abuse, or at least some element of it, occurred within Pima County. A.R.S. § 13–109. Venue was established.

### D. Double Jeopardy

■ Although not raised in the trial court, defendant now contends on appeal that

---

**2.** Defendant also contends that the trial court committed fundamental error in giving an overly broad instruction on kidnapping. Defendant was charged pursuant to A.R.S. § 13–1304(A)(3) and the trial court instructed pursuant to A.R.S. § 13–1304(A)(1–4). In some cases, an overly broad instruction may be reversible error. On retrial, the trial court should assure that the jury instructions are consistent with the charges.

his second trial should have been barred by principles of double jeopardy. Defendant's first trial ended in a mistrial when a police officer testified that defendant had remained silent when questioned. Defendant now argues the mistrial was the result of misconduct by the state and the second trial, consequently, put him in double jeopardy. *Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984). We disagree. *Pool* is distinguishable. There, the prosecutor *deliberately* injected error in the first trial in order to force the defendant to request a mistrial. We found the conduct of the prosecutor in *Pool* "egregiously incorrect to the extent that we must infer that the questions were asked with knowledge that they were improper." *Pool*, 139 Ariz. at 107, 677 P.2d at 270. Here the record shows no signs of the prosecutor "inviting" the error and with it, necessarily, a mistrial; thus, there was no egregious prosecutorial misconduct in the first trial. Defendant was not subjected to double jeopardy.

### E. Review for Fundamental Error

In addition to the points raised by defendant, we have examined the record relative to the sexual abuse conviction for fundamental error pursuant to A.R.S. § 13–4035 and find none.

### DISPOSITION

We reverse defendant's kidnapping and first degree murder convictions and remand for a new trial on those charges. We affirm defendant's sexual abuse conviction.

FELDMAN, C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.