27 P.3d 331

**STATE of Arizona, Appellee,**

v.

**Ronald Keith TSCHILAR, Appellant.**

**No. 1 CA–CR 00–0495.**

Court of Appeals of Arizona,
Division 1, Department B.

July 17, 2001.

428

Janet Napolitano, Attorney General, by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, for Appellee.

Diane S. McCoy, Flagstaff, for Appellant.

## OPINION

EHRLICH, Judge

¶1 Ronald K. Tschilar appeals his convictions and sentences for multiple counts of kidnapping and aggravated assault. Among the questions he asks is whether the

finding that his kidnapping victims were voluntarily released unharmed, a determination resolving whether the offense is a class 2 or a class 4 felony, is a factual decision for the jury according to the rationale of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We answer this question in the negative as we do his other queries.

*FACTS* [1] *AND PROCEDURAL HISTORY*

¶ 2 On the evening of March 10, 1999, four teenagers, A.S., M.B., M.C. and C.P.,[2] were in C.P.'s red Ford pick-up truck, driving in a wooded area behind the Show Low Elks Lodge when they noticed the headlights of a vehicle approaching fast behind them. The vehicle overtook the truck and came to a sudden stop in the road in front of the truck, whereupon C.P. slammed on the truck's brakes.

¶ 3 Tschilar got out of the vehicle, carrying a gun, and stood in front of the truck, pointing the gun at the truck's windshield. He ordered the teenagers to get out of the truck and lie face down on the ground. A.S. got down on her hands and knees; the others lay on the ground. Tschilar, waving the gun at the teenagers, angrily accused them of having stolen property from his trailer. The teenagers denied having any knowledge about a theft. As M.B. began to get up, saying that they had not stolen anything from Tschilar and begging to be released, Tschilar pointed the gun at M.B.'s head, said that the gun was cocked and told him to get back on the ground. A.S. then jumped up, asking Tschilar not to shoot. The gun discharged, and A.S. was wounded in the arm. The other teenagers then pleaded to be released to take A.S. to the hospital. Tschilar agreed and left.

¶ 4 Tschilar was charged and tried on four counts of kidnapping, four counts of aggravated assault based on his use of a deadly weapon, one count of aggravated assault of A.S. for recklessly causing a serious physical injury and one count of aggravated assault of A.S. for causing temporary but substantial physical impairment.[3]

¶ 5 Tschilar testified that he had been living in a trailer behind the Elks Lodge. Two days before the shooting, while at the lodge, he had noticed a rust-colored Ford pick-up truck being driven in the area near his trailer. When he later returned to the trailer, he had found that some of his possessions had been stolen.

¶ 6 When Tschilar two days later saw in the wooded area behind the lodge what he thought might have been the same truck, he became suspicious. His suspicion grew when the truck increased speed as it continued on the same path as had the truck he had seen before. Tschilar decided to talk to the people in the truck to find out who they were and why they were there.

¶ 7 According to Tschilar, when he pulled in front of the juveniles' truck to cause it to stop, all four teenagers got out of the truck and came toward him, prompting him to get his gun. Tschilar told the jurors that he then pointed the gun in the air and told the teenagers to get on the ground as he tried to "get control" of the situation. When one of the young men would not lie down, Tschilar conceded that he had threatened to cock the gun. He claimed to have then put the gun under his arm and taken out a pen to write the names of the teenagers when the youth who would not lie down "came at" him. He said that this is when he grabbed for the gun and it discharged, hitting A.S. Tschilar insisted that he immediately had agreed to let the teenagers go, even offering to lead them to the hospital but that, when they reached the road to the hospital, the teenagers turned in the opposite direction.

¶ 8 Tschilar was acquitted of the charge of the aggravated assault of A.S. by causing serious physical injury, but he was convicted on the other offenses. For the kidnappings, Tschilar was sentenced to aggravated terms

---

1. We review the facts in the light most favorable to sustaining the verdicts and resolve all reasonable inferences against Tschilar. *State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

2. We use the initials of the victims' names to protect their privacy.

3. An additional charge of attempted second degree murder of A.S. was dismissed prior to trial.

of twelve years with respect to A.S. and M.B. and presumptive terms of 10.5 years with respect to C.P. and M.C. For the aggravated assaults involving the use of a deadly weapon, the trial court sentenced Tschilar to aggravated terms of ten years with respect to A.S. and M.B. and to presumptive terms of 7.5 years with respect to C.P. and M.C. The court also sentenced Tschilar to the presumptive term of six years on the charge of aggravated assault by causing temporary and substantial physical impairment of A.S. The sentences were ordered to be served concurrently.

¶ 9 Tschilar appealed, raising the following issues:

1. Whether the *Apprendi* case requires that the determination of kidnapping as a class 2 or a class 4 felony be a jury question dependent as it is on a factual resolution of the question whether he voluntarily released the victims unharmed;

2. Whether the trial court erred in failing to find that the teenagers were safely released for the purpose of reducing the charges of kidnapping from class 2 to class 4 felonies;

3. Whether the trial court was entitled to consider the number of victims as an aggravating factor in determining Tschilar's sentence;

4. Whether Tschilar was entitled to a jury instruction regarding the law of citizen's arrest; and

5. Whether the trial court should have *sua sponte* instructed the jury on the crime of unlawful imprisonment as a lesser-included offense of kidnapping.

### DISCUSSION

A. *Effect of Apprendi*

¶ 10 The kidnapping statute, Ariz.Rev. Stat. ("A.R.S.") section 13–1304 (2001), provides:

A. A person commits kidnapping by knowingly restraining another person with the intent to:

* * *

3. Inflict death, physical injury or a sexual offense on the victim, or to otherwise aid in the commission of a felony; or

4. Place the victim or a third person in reasonable apprehension of imminent physical injury to the victim or such third person.

Pursuant to section 13–1304(B), kidnapping is a class 2 felony,

unless the victim is released voluntarily by the defendant without physical injury in a safe place prior to arrest and prior to accomplishing any of the further enumerated offenses in subsection A of this section in which case it is a class 4 felony.

¶ 11 At trial, Tschilar proposed forms of verdict that would permit the jury, not the court, to determine whether he had released the victims such that the kidnapping offenses could be designated class 4 felonies rather than class 2 felonies if he were convicted. The State responded that, according to *State v. Eagle*, 196 Ariz. 188, 994 P.2d 395, *cert. denied*, 531 U.S. 839, 121 S.Ct. 102, 148 L.Ed.2d 60 (2000), the question did not pertain to an element of the offense but, rather, was one to be resolved by the court in sentencing the convicted defendant.

¶ 12 In *Eagle*, the Arizona Supreme Court held that A.R.S. section 13–1304(A) completely defines the elements of kidnapping and that subsection B only pertains to the classifications of the punishment. *Id.* at 190–91 ¶¶ 7–8, 10, 994 P.2d at 397–98. The voluntary release of a victim was determined to be "a mitigating factor relevant solely for sentencing purposes." *Id.* at 192 ¶ 17, 994 P.2d at 399. The court expressly rejected the theory that a victim's safe release constituted an element of second-degree kidnapping, concluding that no such offense exists in Arizona. *Id.* at 189–90 ¶ 4, 994 P.2d at 396–97.

¶ 13 While Tschilar requested and the trial court granted a deferral of its ruling to give defense counsel time to read *Eagle*, the matter was not pursued, and Tschilar did not object to the forms of verdict ultimately used. Accordingly, the court did not present the matter to the jury, and, at sentencing, it

designated Tschilar's kidnapping convictions as class 2 felonies.[4]

¶ 14 Tschilar contends that whether the teenagers were voluntarily released unharmed as described in A.R.S. section 13–1304(B) was an element of the offense of kidnapping requiring a jury determination of that fact according to *Apprendi*. The issue presented to us, therefore, is whether *Apprendi* effectively serves to overrule the holding in *Eagle* that the victim's safe release is not an element of the offense of kidnapping but a factor involved in sentencing.[5] We conclude that it does not.

¶ 15 *Apprendi* had not been decided when Tschilar was sentenced, but, because it presents a new rule of constitutional law, its rationale is applied to cases pending on direct review. *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). It is a question of law that we review *de novo* whether *Apprendi* requires that the issue of a victim's safe release as set forth in A.R.S. section 13–1304(B) be resolved by the jury as an element of the offense of kidnapping. *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).

¶ 16 Apprendi pleaded guilty to possession of a firearm for an unlawful purpose and two other offenses. The firearms offense arose from an occasion in which Apprendi had fired into the home of an African American family that had moved into his neighborhood. After his arrest, Apprendi had stated that, while he did not know them, he did not want the family in the neighborhood because they were African Americans. He later retracted the statement. As part of the plea agreement, the prosecutor reserved the right to request an enhanced sentence on that firearms charge on the basis that the offense

had been committed with racial bias. Without the enhancement, the range of sentence was five to ten years; with the enhancement, the range of sentence was ten to twenty years. The trial court found that the crime was motivated by racial bias, applied the enhancement and sentenced Apprendi to twelve years for that offense.

¶ 17 Apprendi argued on appeal that the issue of his bias had to be decided beyond a reasonable doubt by a jury. The New Jersey appellate courts affirmed the trial court. The United States Supreme Court reversed.

¶ 18 The Supreme Court found that, by virtue of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and the right to a jury trial in the Sixth Amendment to the Constitution, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, "it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." *Id.* at 490, 120 S.Ct. 2348. Accordingly, it held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348. The Court expressly distinguished, however, the trial court's discretion to consider various factors related to the offense and the offender when it imposes a sentence within the range of punishment prescribed by the statute. *Id.* at 481–82, 120 S.Ct. 2348. Its concern was that a defendant not be exposed to punishment exceeding the range authorized by the verdict. *Id.* at 482–83, 120 S.Ct. 2348.

4. Although the court did not submit the question to the jury, implicit in the guilty verdicts for aggravated assault are factual findings that would make Tschilar ineligible for a reduction of classification pursuant to A.R.S. section 13–1304(B). The jury was told that, to find Tschilar guilty of aggravated assault, it first had to find that he had committed an assault by either causing physical injury to another person or intentionally placing another person in reasonable apprehension of immediate physical injury. By convicting Tschilar of aggravated assault as to all four victims, the jury in essence made the factual

findings necessary to make Tschilar ineligible for a reduction in felony classification for kidnapping.

5. Tschilar claims that *Hennessy v. Goldsmith*, 929 F.2d 511 (9th Cir.1991), provides guidance. However, that case was decided before *Eagle*, and the court merely articulated the status of Arizona law at that time. *Id.* at 513–14. Indeed, the court recognized that the Arizona Supreme Court had not addressed the issue.

¶ 19 *Apprendi* is not implicated in the execution of A.R.S. section 13–1304. Conviction by a jury for kidnapping pursuant to section 13–1304(A) authorizes the trial court to sentence a defendant for the commission of a class 2 felony. A determination that the kidnapping victims were released unharmed as defined by section 13–1304(B) simply leaves the range of punishment unchanged or reduces the range to that of a class 4 felony. Thus, the fact of release as found by the court does not expose a defendant to a punishment exceeding that permitted by the verdict; it only offers the possibility of a punishment less than that allowed by the verdict. The resolution of the question whether a victim was safely released has no bearing on the jury's determination that the offense of kidnapping had been committed.

¶ 20 The Court in *Apprendi* itself suggested that its rule does not apply to a statutory scheme like that of Arizona. It acknowledged that, consistent with its holding, a legislature may devise sentence classifications dependent upon certain factors within a set range, the purpose being to avoid "penal statutes that expose *every* defendant convicted of [a particular offense] to a maximum sentence exceeding that which is, in the legislature's judgment, generally proportional to the crime." *Id.* at 490 n. 16, 120 S.Ct. 2348 (emphasis original). The Court also recognized a distinction between aggravating and mitigating factors, noting that concerns regarding jury and burden-of-proof requirements are absent from a statutory scheme that permits the sentencing court to make findings that reduce a sentence authorized by a verdict. *Id.*

¶ 21 *Apprendi* does not affect the analysis in *Eagle* that the safe release of a victim is not an element of kidnapping. In Tschilar's case, the resolution of the factual issue whether the teenagers were safely re-

leased did not expose him to a punishment exceeding that authorized by the verdict that he was guilty of four counts of kidnapping.[6]

*B. The Trial Court's Failure to Find Safe Release*

¶ 22 At sentencing, the court heard argument whether the kidnapping convictions involving the three uninjured teenagers should be designated as class 2 or class 4 felonies. As detailed above, kidnapping is reduced from a class 2 felony to a class 4 felony if the defendant voluntarily releases the victim without physical injury in a safe place before he accomplishes any of the offenses enumerated in A.R.S. section 13–1304(A) and before he is arrested. Among the enumerated offenses is placing the victim in reasonable apprehension of imminent physical injury. A.R.S. § 13–1304(A)(4).

¶ 23 The prosecutor argued that each of Tschilar's kidnapping convictions should be designated as a class 2 felony because, even if Tschilar did leave the teenagers in a safe place, he did so only after having placed them in reasonable apprehension of imminent physical injury as proven by his convictions for aggravated assault. Tschilar countered that, because the very act of kidnapping according to A.R.S. section 13–1304(A)(4) necessarily places a victim in reasonable apprehension of imminent physical injury, the distinction between a class 2 felony and a class 4 felony is one impossible to make according to the statutory definition. Without disclosing its reasons, the court agreed with the prosecutor.

¶ 24 Renewing that contention, Tschilar argues that whether a defendant places a kidnapping victim in reasonable apprehension of imminent physical injury should not be considered when determining the felony classification for kidnapping because the kidnapping itself causes such apprehension.[7] He main-

---

**6.** In this context, it is appropriate that we make clear the distinction between mitigating factors relevant solely for sentencing purposes and factors that reduce a greater offense to a lesser-included offense. The latter involves a comparison of the proof of the essential elements of the greater offense with that of the elements required to prove the lesser offense. *State v. Welch,* 198 Ariz. 554, 556 ¶ 7, 12 P.3d 229, 231 (App.2000).

In a case in which a defendant is charged with a lesser-included offense, all of the elements of the lesser-included offense are to be determined by the jury.

**7.** Implicit in Tschilar's argument is the concession that sufficient evidence was presented that he actually placed the teenagers in reasonable apprehension of imminent physical injury. The

tains that to so construe A.R.S. section 13–1304(B) contravenes the legislative policy of encouraging a kidnapper to release his victim before actual injury or death occurs. *Rainwater v. State*, 189 Ariz. 367, 368, 943 P.2d 727, 728 (1997). Consequently, he continues, the trial court erred in failing to classify his kidnapping convictions as class 4 offenses.

¶ 25 The issue is one of statutory construction, which we review *de novo*. *Zamora*, 185 Ariz. at 275, 915 P.2d at 1230. Our primary purpose in interpreting a statute is to give effect to the intent of the legislature. *Id.* To that end, we look first to the plain language of the statute as the best evidence of that intent. *Id.* If the statute's language is clear and unambiguous, we give effect to that language and do not apply other rules of statutory construction. *State v. Riggs*, 189 Ariz. 327, 333, 942 P.2d 1159, 1165 (1997).

¶ 26 We find no ambiguity in the statute. Section 13–1304(B), A.R.S., reduces a kidnapping conviction from a class 2 felony to a class 4 felony if "the victim is released voluntarily by the defendant without physical injury in a safe place prior to arrest and prior to accomplishing any of the further enumerated offenses in subsection A." All of the conditions must be met for the reduction in classification to apply. *Eagle*, 196 Ariz. at 191 ¶ 12, 994 P.2d at 398. Thus, the statute clearly requires that a defendant not have accomplished any of the offenses enumerated in subsection A, which includes placing a victim in reasonable apprehension. A.R.S. § 13–1304(A)(4). Nothing in the language of the statute is ambiguous or suggests that subsection 13–1304(A)(4) should be excluded from consideration when determining whether the lesser classification is warranted.

¶ 27 Tschilar asserts, however, that such a construction is contrary to the legislative intent of the statute to encourage the safe release of a victim before actual injury or death. *See Eagle*, 196 Ariz. at 191 ¶ 12, 994 P.2d at 398. We disagree because the legislature also could have intended to encourage

release before the victim suffered emotional harm.

¶ 28 We also disagree with Tschilar's factual contention that kidnapping in and of itself necessarily places a person in reasonable apprehension of imminent physical injury. Kidnapping involves the knowing restraint of another person with the intent to commit one of six enumerated offenses. A.R.S. § 13–1304(A). The kidnapper need not complete the enumerated offense to complete the kidnapping. *Eagle*, 196 Ariz. at 190 ¶ 7, 994 P.2d at 397. A situation is conceivable in which a defendant restrains a person with the intent to place the person in apprehension of imminent physical harm, thereby completing the act of kidnapping, but the victim simply does not fear the defendant. It may be that the victim knows the kidnapper or, for whatever reason, does not feel physically threatened, e.g., the kidnapper's physical traits or condition, when no weapon is involved or the supposed weapon obviously is not real. It is also possible that a kidnapping victim could be generally apprehensive and fearful but not be reasonably fearful of imminent injury. Obviously, though, when Tschilar effected the kidnapping by pointing a real and cocked gun at teenagers unknown to him or he to them, the very act of kidnapping is intertwined with actually instilling fear in the victims and will result in the accomplishment of that factor.

¶ 29 We find no ambiguity in the statutory language to support Tschilar's contention that the legislature intended to exclude A.R.S. section 13–1304(A)(4) from consideration under subsection (B), and we are unpersuaded by his factual assertions that any kidnapping would necessarily involve placing a victim in reasonable apprehension of imminent physical injury. We therefore find no error in the trial court's failure to reduce the classification of Tschilar's kidnapping convictions from class 2 felonies to class 4 felonies.

## C. Number of Victims as an Aggravating Factor

¶ 30 At sentencing, the court found the number of victims to be an aggravating fac-

---

victims did testify that they feared for their lives, and the jury convicted Tschilar of the aggravated

assault of each teenager.

tor, but it recognized that the teenagers all were subject to one event. The court also found that the age of the victims and the emotional harm caused to A.S. and M.B. were aggravating factors, but it specifically found no evidence of emotional harm to C.P. and M.C. As mitigating factors, the court found that Tschilar had only one prior misdemeanor offense, that he was remorseful during trial and sentencing, and that he had an extensive history of assisting those in need in the community. Accordingly, it imposed aggravated sentences for the kidnapping and class 3 aggravated assault charges involving A.S. and M.B. and presumptive terms on the remaining counts, all terms to be served concurrently.

¶ 31 Tschilar contends that the trial court improperly considered as an aggravating factor the number of victims involved. He argues that, for offenses such as aggravated assault and kidnapping, a victim is an essential element and, therefore, the number of victims cannot be used to aggravate the sentence.

¶ 32 We review for an abuse of the trial court's discretion a sentence within the range prescribed by the legislature. *State v. Jenkins,* 193 Ariz. 115, 121 ¶ 25, 970 P.2d 947, 953 (App.1998). However, whether a particular aggravating factor used by the court is an element of the offense and whether the court properly can use such a factor in aggravation are questions of law, which we review *de novo. State v. Virgo,* 190 Ariz. 349, 352, 947 P.2d 923, 926 (App.1997).

¶ 33 An element of an offense may be used as an aggravating factor if the legislature has specified that it may be so used. *State v. Lara,* 171 Ariz. 282, 284, 830 P.2d 803, 805 (1992); *State v. Bly,* 127 Ariz. 370, 373, 621 P.2d 279, 282 (1980). The legislature has articulated aggravating factors in non-capital cases in A.R.S. section 13–702(C) (Supp.2000). Ordinarily, if an element is not specified in section 13–702(C), it may not be used to aggravate a sentence because "to enhance punishment, in the absence of any legislative intent, by using the very elements of the crime as aggravating

factors" would undermine "the carefully structured statutory scheme providing for presumptive sentences." *State v. Germain,* 150 Ariz. 287, 290, 723 P.2d 105, 108 (App. 1986). "Number of victims" is not a statutory aggravating factor set forth in section 13–702(C). Nonetheless, an element not included in that section may be used to aggravate a sentence if it involves conduct that rises to a level beyond that merely necessary to establish the underlying crime, in which case the court may consider the factor pursuant to section 13–702(C)(18). *Id.*

¶ 34 A victim indeed is a necessary element of both kidnapping and aggravated assault. The plain language of each statute states that the prohibited conduct must be committed against "another person." A.R.S. §§ 13–1203(A)(1)(2) (2001), 13–1204(A) (2001), 13–1304(A). In contrast, other offenses, even if involving victims, do not necessarily refer to the victim as an element of the offense. *See, e.g.,* A.R.S. § 13–1508(A) (1989)(burglary in the first degree defined as entering or remaining unlawfully in or on commercial property or a residential structure with the intent to commit a theft or felony while knowingly possessing a deadly weapon or dangerous instrument), § 13–2310 (Supp.2000) (fraudulent schemes and artifices defined as knowingly obtaining any benefit by means of false or fraudulent pretenses, representations, promises or material omissions). But we do not agree with Tschilar's contention that "the number of victims" is an element because "a victim" is an element of the offense. While the court could not have aggravated the sentence based on the crimes having been committed against one person, by committing the acts against multiple victims simultaneously, Tschilar altered the character and increased the magnitude of the offenses. Kidnapping and assaulting four teenagers at once arguably creates a greater risk of physical and emotional injury as to each as they see the others terrorized or injured and arguably represents a graver offense to society. In any case, for neither of the crimes in question is multiple victims an element of the offense.[8] We therefore do not

---

8. In his reply brief, Tschilar asserts that aggrava-

ting a sentence with the number of victims vio-

find the consideration of the number of victims to be beyond the discretion of the court.

### D.  Citizen's-arrest Jury Instruction

¶ 35 Tschilar testified that he thought that the truck in which the teenagers were riding might be the same one that he had seen the day his trailer was burglarized.  He said that he had pursued and stopped the youths because he felt that they were acting suspiciously, and he wanted to ask their names and find out why they were driving in that area.  Evidence was presented regarding the manner in which law-enforcement officers sometimes conduct high-risk felony stops of vehicles, and Tschilar requested that the court instruct the jury regarding a citizen's arrest consistent with A.R.S. section 13–3884 (1989), which states that "a private person may make an arrest"

2.  When a felony has been in fact committed and he has reasonable ground to believe that the person to be arrested has committed it.

The court initially agreed to give the requested instruction.  However, during the prosecutor's cross-examination, Tschilar testified that he possessed no more than a suspicion that anyone in the truck had been involved in the burglary of his trailer and that his purpose in pursuing and confronting the teenagers was to question them, not to make a citizen's arrest.  The court then reversed its decision, questioning how the instruction was relevant in light of Tschilar's own testimony that he was not making a citizen's arrest.  Instead, it found that the statute did not apply to merely stopping a vehicle for investigative purposes.

¶ 36 A party is entitled to a jury instruction on any theory reasonably supported by the evidence. *State v. Trostle,* 191 Ariz. 4, 15, 951 P.2d 869, 880 (1997).  The decision to refuse a jury instruction is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse

of its discretion.  *State v. Bolton,* 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995).

¶ 37 We find no abuse of discretion in the trial court's decision that there was insufficient evidence of a citizen's arrest to warrant giving such a jury instruction.  While Tschilar argues that his act of brandishing a gun could have been explained as an effort to make a citizen's arrest, his testimony that he only was trying to gather information but not effect an arrest during his pursuit of and confrontation with the teenagers vitiates his theory.  Nothing in the statute conveys authority for private persons to detain others for investigation, which is what Tschilar claimed to have been doing.  The court did not err in refusing to give the instruction.

### E.  Instruction on Unlawful Imprisonment

¶ 38 Tschilar unsuccessfully requested two lesser-included-offense instructions with regard to the aggravated assault charges, neither of which concerned the offense of unlawful imprisonment.  At the time of the request, the trial court asked defense counsel, "Those two only?" to which counsel responded "Correct."  Defense counsel did not request and there was no discussion about an instruction on unlawful imprisonment.  Tschilar now contends that the court *sua sponte* should have instructed the jury on unlawful imprisonment as a lesser-included offense of kidnapping.

¶ 39 Lesser-included-offense instructions must be given if requested and if supported by the evidence. *State v. Detrich,* 178 Ariz. 380, 383, 873 P.2d 1302, 1305 (1994). A lesser-included offense is one that consists solely of some but not all of the elements of the greater offense such that it would be impossible to commit the greater offense without committing the lesser. *State v. Chabolla–Hinojosa,* 192 Ariz. 360, 363 ¶ 11, 965 P.2d 94, 97 (App.1998).  An instruction on a

lates constitutional prohibitions against double jeopardy.  By not raising this claim until his reply brief, he has waived the issue. *State v. Guytan,* 192 Ariz. 514, 520 ¶ 15, 968 P.2d 587, 593 (App.1998).  Nonetheless, the Arizona Supreme Court has found no double jeopardy in

considering multiple victims of murder as an aggravating factor in sentencing pursuant to A.R.S. section 13–703(F)(8) (Supp.2000). *State v. Greenway,* 170 Ariz. 155, 168, 823 P.2d 22, 35 (1991).

lesser-included offense must be given if the jury could rationally find that the State failed to prove the distinguishing element of the greater offense. *Detrich,* 178 Ariz. at 383, 873 P.2d at 1305. However, when a defendant does not request a lesser-included instruction, he waives the issue, and we review for fundamental error only. *State v. Dickens,* 187 Ariz. 1, 22–23, 926 P.2d 468, 489–90 (1996), *cert. denied,* 522 U.S. 920, 118 S.Ct. 311, 139 L.Ed.2d 240 (1997); Ariz.R.Crim.P. 21.3(c).

¶ 40 Unlawful imprisonment is defined as "knowingly restraining another person." A.R.S. § 13–1303(A) (1989). Kidnapping is "knowingly restraining another person with the intent to" commit any one of six enumerated types of prohibited conduct. A.R.S. § 13–1304(A). Unlawful imprisonment, therefore, is a lesser-included offense of kidnapping, with the distinguishing element being whether the accused had the intent to engage in any of the conduct enumerated in section 13–1304(A). *Detrich,* 178 Ariz. at 383, 873 P.2d at 1305.

¶ 41 Tschilar was charged with restraining the teenagers with the intent to place them in reasonable apprehension of imminent physical injury. A.R.S. § 13–1304(A)(4). He argued in defense that the jury could have found that his intent in restraining the victims was to gather information and that he produced the gun for self-protection. We disagree, however, that the jury could have rationally failed to find the distinguishing factor, because Tschilar admitted pointing the gun in the direction of the teenagers and threatening to cock the gun to gain authority over them. This necessarily implicates the intent to place the victims in reasonable apprehension of imminent physical injury. The use of a gun as a method of control is, after all, based on its potential to inflict harm. Even if the jury believed that Tschilar's purpose was to gather information as he contended, his admitted manner of attempting to accomplish this purpose established the intent to place the teenagers in reasonable apprehension of imminent physical injury.

While Tschilar asserts that the jury could have concluded that he used the weapon for protection, the jury was instructed on justification and rejected that argument.

¶ 42 Tschilar contends that his case is analogous to that of *State v. Flores,* 140 Ariz. 469, 682 P.2d 1136 (App.1984), in which the trial court's failure to *sua sponte* instruct the jury on unlawful imprisonment constituted fundamental error. *Flores,* however, is distinguishable. That defendant was charged with kidnapping based on an intent to commit robbery, and his defense was that he thought that he had a claim to the property taken. The trial court instructed the jury that such a good-faith belief would have invalidated the robbery charge. Consequently, if the jury believed that Flores acted out of a good-faith belief that he had a claim to the property, the restraint of a kidnapping could not be based on an intent to rob. Therefore, the jurors could have found that Flores was guilty of unlawful imprisonment but did not have the intent to rob necessary to elevate the offense to kidnapping. The court noted, but found immaterial, the fact that the jury acquitted Flores of the robbery count.

¶ 43 Such an analysis does not apply to Tschilar's case for, even if the jury believed that his overriding intent was to gather information, the manner in which Tschilar admittedly did so constitutes the element of intent required by the statute. Also, the jury convicted Tschilar of aggravated assault as to each victim, by which verdicts the jury independently found, at least as to the uninjured victims,[9] that Tschilar intentionally placed the teenagers in reasonable apprehension of imminent physical injury. A.R.S. §§ 13–1203(A)(2), 13–1204(A).

¶ 44 The jury could not rationally have failed to find that Tschilar intended to place the teenagers in reasonable apprehension of imminent physical injury regardless whether it believed his claims as to his purpose. The failure to give an instruction on unlawful imprisonment did not, therefore, deny Tschi-

---

9. With respect to A.S., the jury could have based its underlying *assault* conviction on a finding either that Tschilar caused physical injury or that he placed A.S. in reasonable apprehension of injury. A.R.S. § 13–1203(A)(1)(2).

lar a fair trial, and we find no fundamental error.

## CONCLUSION

¶ 45 Tschilar's convictions and sentences are affirmed.

CONCURRING: CECIL B. PATTERSON, Jr., Judge, WILLIAM F. GARBARINO, Judge.