IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAY 10 2006

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2004-0362 |
| Appellee, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| KENNETH SCOTT MACHADO, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20040585

Honorable John E. Davis, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Cari McConeghy-Harris                    Phoenix
                                                      Attorneys for Appellee

Robert J. Hooker, Pima County Public Defender
  By Kristine Maish                                              Tucson
                                                      Attorneys for Appellant

H O W A R D, Presiding Judge.

¶1 After a jury trial, appellant Kenneth Machado was convicted of sexual assault, solicitation of a class one felony, and interfering with judicial proceedings. The trial court sentenced Machado to consecutive, presumptive prison terms totaling 10.5 years for the sexual assault and solicitation convictions and time served for the interference with judicial proceedings conviction. On appeal, Machado argues the trial court erred by denying his requested jury instruction on spousal defense to sexual assault, precluding testimony, giving the standard jury instruction on reasonable doubt, and failing to consider the overwhelming mitigating circumstances when imposing his sentences. Finding no reversible error, we affirm.

¶2 We view the facts in the light most favorable to sustaining the convictions, resolving all reasonable inferences against the defendant. *State v. Riley*, 196 Ariz. 40, ¶ 2, 992 P.2d 1135, 1137 (App. 1999). Machado and his wife, the victim, were married in November 1994. In September 2003, the couple separated and Machado's wife moved out of the family residence and into an apartment. During the separation, the couple continued to attend marriage counseling. Machado's wife also occasionally visited the family home to collect her belongings and provide care for their minor children.

¶3 In December 2003, Machado's wife went to the family residence so Machado could help her study for an important examination. During this time, Machado prepared an intravenous (IV) solution of dextrose and water and, with his wife's permission, administered it to her in order to give her "energy to study." Shortly thereafter, she became ill and lost

2

consciousness. She awoke briefly and found herself lying on Machado's bed, but lost consciousness again. The next time she awoke she was in a hospital emergency room. Subsequent tests found that her blood alcohol concentration was .20 and that she was suffering from benzodiazepine (Valium) poisoning. Hospital staff also found what was determined to be Machado's semen in her vaginal area.

¶4 After Machado's wife was released from the hospital, she and Machado met with a marriage counselor to discuss the incident. When she left the meeting, Machado's wife noticed that Machado was following her, and the next day, she obtained an order of protection against him. Nevertheless, on January 14, Machado visited his wife's apartment and left her a gift of "a letter and flowers" in her vehicle. Machado's wife subsequently called the police and reported Machado's violation of the protective order.

¶5 In January 2004, Machado contacted Richard Corey, his cousin, and asked him to help "get rid of" his wife. Machado told Corey he planned to rent a van and when his wife finished work on the morning of January 31, he would shock her using an electroshock gun, put her in the van, and drive away. Machado asked Corey to pick up his wife's car after Machado had abducted her. Corey said he would "think about it," but later mentioned Machado's plan to several people, including Corey's mother. His mother warned Machado's wife her "safety was in danger," and Machado's wife called the police. On January 31, the day of the planned abduction, Machado voluntarily committed himself to the psychiatric unit at Kino Hospital.

¶6        A police investigation ensued and subsequently showed Machado had purchased an electroshock gun on January 29. The police also discovered Machado had rented a van and a hotel room during that same time period. A search of Machado's bedroom closet produced a bag containing the electroshock gun, a stethoscope, instruction manuals, and batteries. Machado was arrested and charged with sexual assault, administering intoxicating liquors or a narcotic or dangerous drug, attempted first-degree murder, solicitation of a class one felony, and interfering with judicial proceedings. The trial court directed a verdict on the count of administering intoxicating liquors or a narcotic or dangerous drug. The jury acquitted Machado on the attempted first-degree murder charge but found him guilty of the remaining counts.

**SPOUSAL DEFENSE JURY INSTRUCTION**

¶7        Machado argues the trial court abused its discretion by refusing to give his requested jury instruction on the spousal defense to sexual assault. We review a trial court's refusal to give a requested jury instruction for an abuse of discretion, *State v. Tschilar*, 200 Ariz. 427, ¶ 36, 27 P.3d 331, 340 (App. 2001). A defendant is entitled to a jury instruction on any theory for which there is reasonable support in the evidence. *State v. Johnson*, 205 Ariz. 413, ¶ 10, 72 P.3d 343, 347 (App. 2003).

¶8        Machado was indicted for sexual assault pursuant to A.R.S. § 13-1406. During the settling of jury instructions, he requested an instruction based on the version of A.R.S. § 13-1407(D) in effect at the time of the offense. His requested instruction read: "It

4

is a defense to a prosecution pursuant to Section 13-1404, 13-1405 or 13-1406 that the person was the spouse of the other person at the time of commission of the act."[1] The state objected, arguing that Machado did not meet the definition of "spouse" in A.R.S. § 13-1401(4), "a person who is legally married and cohabiting."

¶9 Both parties agreed that Machado and his wife were married at the time of the offense. The state argued, however, that, because Machado and his wife did not live in the same residence, they were not cohabiting, and thus, Machado could not be a spouse under § 13-1401(4). Machado countered that whether two people are cohabiting is based on many factors other than just living together; therefore, this issue was a question of fact for the jury. The state responded that the court should first determine whether there were sufficient facts to support a finding that Machado and his wife had been cohabiting. Without making any express findings, the court denied Machado's requested instruction.

¶10 Machado contends that whether two people are cohabiting can have "various meanings and interpretations" and that the term is "a flexible and broad one." He cites

---

[1]This provision was amended in 2005 to essentially repeal the spousal defense to sexual assault. It now reads:

> It is a defense to a prosecution pursuant to section 13-1404 or 13-1405 that the person was the spouse of the other person at the time of commission of the act. It is not a defense to a prosecution pursuant to section 13-1406 that the defendant was the spouse of the victim at the time of commission of the act.

2005 Ariz. Sess. Laws, ch. 185, § 4.

several cases from foreign jurisdictions that have discussed the meaning of cohabitation in various circumstances. We do not find these cases helpful because the issue we must resolve is what the Arizona legislature intended by including the word "cohabiting" in the statute. *See State v. Henry*, 205 Ariz. 229, ¶ 14, 68 P.3d 455, 459 (App. 2003).

**¶11** In determining the meaning of a statute, we must give effect to the intent of the legislature in enacting the provision. *See Abbott v. City of Tempe*, 129 Ariz. 273, 275, 630 P.2d 569, 571 (App. 1981). A statute's plain language provides "the best and most reliable index of a statute's meaning." *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). Therefore, unless it clearly appears that the legislature intended some special or technical meaning, words in a statute should be given their natural and obvious meanings. *State v. Reynolds*, 170 Ariz. 233, 234, 823 P.2d 681, 682 (1992); *see also* A.R.S. § 1-213 ("Words and phrases shall be construed according to the common and approved use of the language.").

**¶12** We note that the word "cohabiting" is not explicitly defined in the criminal code, and it does not appear the legislature attached any special meaning or definition to that word. We therefore define the term in accordance with its normal meaning. *See Reynolds*, 170 Ariz. at 234, 823 P.2d at 682. Both *Webster's New Collegiate Dictionary* and *The American Heritage Dictionary* define "cohabit" as "to live together as husband and wife." *The American Heritage Dictionary* 289 (2d college ed. 1991); *Webster's New Collegiate Dictionary* 216 (1980). In addition, *Black's Law Dictionary* defines "cohabitation" as:

6

"[t]he fact or state of living together, esp[ecially] as partners in life, usu[ally] with the suggestion of sexual relations." *Black's Law Dictionary* 277 (8th ed. 2004). Therefore, the common meaning of the term "cohabit" is a couple who is living together and behaving as married partners.

¶13 Machado argues that the facts adduced at trial suggested he and his wife were cohabiting. He first notes he and his wife had been sharing the rent and mortgage payments at both residences and his wife's personal belongings had remained at the family residence. He also said his wife would visit the family residence and go for walks with their children. Machado further notes he and his wife were attending counseling and making attempts to reconcile.

¶14 Although these facts may indicate an ongoing relationship, none demonstrates that Machado and his wife were cohabiting in the normal sense of the word. Furthermore, the record shows Machado's wife had moved out of the family residence and into a separate apartment three months before Machado assaulted her. And Machado's wife testified she had not engaged in any sexual activity with Machado since she had moved out. She further testified the couple had drafted a separation agreement in which Machado had agreed not to ask for or attempt to have any physical contact with his wife. Because no evidence reasonably supported a finding that Machado and his wife were cohabiting, Machado was not entitled to the spousal defense instruction. Therefore, the trial court did not abuse its discretion in refusing to give one.

¶15 Machado also raises several constitutional issues related to the trial court's refusal to give a spousal defense jury instruction. In particular, he argues the court's refusal denied him his right to present a defense, his right to due process, and his right to a jury trial. Because he did not raise these issues below, we review his arguments solely for fundamental error. *State v. Martinez*, 210 Ariz. 578, n.2, 115 P.3d 618, 620 n.2 (2005). Fundamental error is error that goes to the foundation of a case such that the defendant could not have received a fair trial. *See State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005). To prevail in a fundamental error review, a defendant must show that error occurred, the error was fundamental, and the error prejudiced the defendant. *Id*. ¶ 20. Because we have found the court did not err by refusing to give the spousal defense jury instruction, Machado cannot prove fundamental error and resulting prejudice. Accordingly, we need not consider these issues further.

## MACHADO'S STATEMENT TO DETECTIVE RIDGEWAY

¶16 Machado next argues the trial court erred by refusing to admit his own testimony and that of Detective Max Ridgeway concerning a conversation between them in which Machado had stated he had not intended to hurt his wife. Machado contends this evidence was admissible pursuant to Rule 803(3), Ariz. R. Evid., 17A A.R.S., to show his state of mind as it related to his renunciation defense to the solicitation charge. But Machado did not challenge the trial court's preclusion of his own testimony on these grounds below. And, although Machado did raise this issue as to Ridgeway's testimony, the

8

record shows Machado made the state of mind argument only as to the attempt charge; he expressly conceded at trial this argument did not apply to the solicitation charge. Because Machado did not raise below the issues he now argues on appeal, we review them solely for fundamental error. *See Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607.

¶17 On February 3, shortly after Machado was released from Kino Hospital, Ridgeway visited Machado at his residence. According to his report, Ridgeway informed Machado he would not ask him any questions and only wanted Machado to listen to what he had to say. Ridgeway then told Machado he was a suspect in a conspiracy to commit murder or kidnapping against his wife and Ridgeway did not want anything to happen to her. Machado responded that "he didn't have any intention of hurting anyone and that he had no plans to hurt her." When Ridgeway returned to his office, he found a voice message left by Machado asking Ridgeway "to let his wife know he didn't want to hurt her," and "he didn't want her to be walking around scared he was going to do something."

¶18 Machado contends his and Ridgeway's precluded testimony was relevant under Rule 803(3) to show he had renounced his plans to kidnap and murder his wife. Rule 803(3) allows admission of a hearsay statement if it is a "statement of the declarant's then existing state of mind, . . . but not including a statement of memory or belief to prove the fact remembered or believed." The solicitation charge alleged Machado had requested that Corey help him harm the victim on January 30. Machado claims, however, he renounced his plan on January 31 when he committed himself to Kino Hospital and his conversation

9

with Ridgeway was evidence of this renunciation. But Machado's conversation with Ridgeway occurred on February 3, three days after his supposed renunciation. Machado's statements were only relevant to show his state of mind during his conversation with Ridgeway and not when he claims the actual renunciation occurred. Accordingly, they were not admissible under Rule 803(3) because they were a "statement of memory or belief to prove the fact remembered."

¶19 Machado contends this evidence was relevant to counter the state's own theory that he had planned to murder his wife as late as February 6, arguing this evidence would show he had renounced any future plan he might have had to harm his wife. But the state charged Machado with soliciting Corey on January 30 to help him kill his wife. And Machado has not identified any evidence showing that Corey, who knew the police had been contacted, was involved after that time. The trial court therefore did not err by sustaining the state's objection and precluding Machado's and Ridgeway's testimony on this issue.

¶20 Moreover, as the state points out, Machado testified in his own defense and stated he had not planned to harm his wife. Consequently, the jury was aware of Machado's denial of his intent to solicit her murder. Even so, the jury found Machado guilty of the solicitation charge. Therefore, even if he or Ridgeway had been allowed to testify Machado had told Ridgeway that Machado did not intend to harm his wife, we can say beyond a reasonable doubt the verdict would have been the same. Accordingly, even assuming error,

10

Machado has not met his burden of showing he was prejudiced by preclusion of the testimony. *See Henderson*, 210 Ariz. 561, ¶ 26, 115 P.3d at 608.

**¶21** Finally, Machado argues the court's preclusion of his and Ridgeway's testimony on this issue denied him his right to compulsory process and his right to present a defense. But, once again, he did not raise these constitutional claims below; thus, we review these issues only for fundamental error. *See id.* ¶ 19. And, because we have already found the court did not err on these issues, we cannot find Machado met his burden of showing error and resulting prejudice merely by raising these same issues under the purview of the Arizona and United States Constitutions.

## *PORTILLO* INSTRUCTION

**¶22** Machado next argues the trial court erred by giving the reasonable doubt instruction required by *State v. Portillo*, 182 Ariz. 592, 898 P.2d 970 (1995). Machado also argues the trial court erred by allowing the state to characterize its burden of proof in its closing arguments as "firmly convinced," which essentially mimicked the language of the *Portillo* instruction. But because Machado requested the court give the *Portillo* instruction, he invited any error in that instruction and is not entitled to appellate review of that issue. *See State v. Logan*, 200 Ariz. 564, ¶ 9, 30 P.3d 631, 632 (2001).

## MITIGATING FACTORS IN SENTENCING

**¶23** Machado further argues the trial court abused its discretion when it failed to consider his "overwhelming mitigating circumstances" in imposing presumptive, consecutive

11

sentences for the sexual assault and solicitation convictions. "A trial court has broad discretion to determine the appropriate penalty to impose upon conviction, and we will not disturb a sentence that is within statutory limits . . . unless it clearly appears that the court abused its discretion." *State v. Cazares*, 205 Ariz. 425, ¶ 6, 72 P.3d 355, 357 (App. 2003). We will find an abuse of sentencing discretion only if the court acted arbitrarily or capriciously or failed to adequately investigate the facts relevant to sentencing. *State v. Ward*, 200 Ariz. 387, ¶ 6, 26 P.3d 1158, 1160 (App. 2001).

¶24        Prior to pronouncing sentence on Machado, the trial court stated it had read the presentence report and had discussed the matter with the probation officer. The court also acknowledged it had received Machado's sentencing memorandum that listed several possible mitigating factors: Machado's lack of criminal history, his military record, his work record, the support he had of his family and community, his devotion to his children, his deep religious conviction, the unusual and extraordinary stress from which he was suffering at the time of the offense, and the "collateral damage" Machado had already received as a result of his arrest and convictions. The court also heard statements at the sentencing hearing from Machado's counsel that reiterated these circumstances. Furthermore, attached to the memorandum were fourteen letters of support written by Machado's family members, friends, and colleagues. And, at the sentencing hearing, Machado's counsel reminded the court of these letters as well as the five character witnesses that had testified at trial on Machado's behalf.

**¶25**    The trial court fully considered the factors relevant to imposing sentence. Because the court's decision to impose presumptive, consecutive sentences was not arbitrary or capricious, we find no abuse of discretion. *See Ward*, 200 Ariz. 387, ¶ 6, 26 P.3d at 1160; *see also State v. Cid*, 181 Ariz. 496, 501, 892 P.2d 216, 221 (App. 1995) ("[A]n appellate court presumes that the trial court considered all relevant mitigating factors in rendering its  sentencing decision.").

**¶26**    We affirm Machado's convictions and sentences.


_____
JOSEPH W. HOWARD, Presiding Judge


CONCURRING:


_____
JOHN PELANDER, Chief Judge


_____
GARYE L. VÁSQUEZ, Judge