NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ISAIAS CHAVARRIA, *Appellant*.

No. 1 CA-CR 16-0123
FILED 5-22-2018

Appeal from the Superior Court in Maricopa County
No. CR2010-005533-001
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David Simpson
*Counsel for Appellee*

The Nolan Law Firm PLLC, Mesa
By Cari McConeghy Nolan, Todd E. Nolan, Vicki A. R. Lopez
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge James P. Beene and Judge Kent E. Cattani joined.

_____

**H O W E**, Judge:

¶1          Isaias Chavarria appeals his convictions and sentences for kidnapping and theft by extortion, both class 2 dangerous felonies, and aggravated assault, a class 3 dangerous felony. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Chavarria was the ringleader in the kidnapping of an auto body shop employee after she was lured to a trailer park in west Phoenix to inspect some cars. The kidnappers tied the victim up and placed a hood over her face. During the several days the kidnappers held the victim captive, Chavarria and his accomplices repeatedly beat her legs with a wire, slapped her, threatened her with a gun, pistol-whipped her, and burned her hands with a cigarette lighter. Chavarria demanded $300,000 in ransom and threatened to kill the victim and her family if the ransom was not paid.

¶3          The victim's relatives contacted the police and officers monitored the ransom calls. At the officers' direction, the relatives arranged to drop off the ransom, which contained marked bills and a tracking chip. Before J.L., a co-conspirator, picked up the ransom, he received a call from another co-conspirator who stated that they had already let the victim go. J.L. then saw the victim's relative drop off a bag and when he returned to his car with the bag, he looked inside and noticed the tracking chip. J.L. threw the tracking chip out the window and tried speeding away from the police officers, but the officers caught and arrested him. During that time, the victim called the police to report that she had been released.

¶4          After a seven-day trial, the jury convicted Chavarria of the charged offenses and found that each crime was a dangerous offense based on the use of a deadly weapon or dangerous instrument. The jury found seven aggravating circumstances with respect to each conviction and the court found a prior felony conviction to be an aggravating circumstance. Chavarria did not appear for delivery of the verdict. Five years later, U.S.

Marshals found him in Mexico and extradited him on a bench warrant. Chavarria reported that he had been "on the run" living with a friend in Juarez, Mexico, for the five years. The court sentenced Chavarria to concurrent aggravated terms of 18 years' imprisonment on the kidnapping and theft by extortion convictions, and a consecutive aggravated term of 10 years' imprisonment on the aggravated assault conviction. Chavarria filed a timely delayed notice of appeal.

## DISCUSSION

### 1. Denial of Motion to Preclude Victim's Testimony

¶5   Chavarria argues that the court violated the evidentiary rules and his confrontation rights by denying his pretrial motion to preclude the victim from testifying about information she had purportedly learned from an anonymous source and about which she ostensibly had no personal knowledge. Although we ordinarily review evidentiary rulings for an abuse of discretion, *State v. Escalante-Orozco*, 241 Ariz. 254, 274 ¶ 51 (2017), we review evidentiary rulings that implicate a defendant's constitutional rights de novo, *State v. Goudeau*, 239 Ariz. 421, 440–41 ¶ 35 (2016).

¶6   Chavarria argued in his pretrial motion that the victim provided information to police about Chavarria's involvement in the kidnapping and provided identifying details—including his address— resulting in his arrest only *after* an anonymous source contacted the victim and fed her information. He argued that because the victim had refused a defense interview, "it is impossible to determine what new information is true or is based upon hearsay statements from the anonymous source." He accordingly asked the court to limit the victim's testimony "to information she knew and disclosed prior to her contact with the anonymous source."

¶7   The prosecutor denied that the victim's knowledge was based on her contact with the anonymous source, and indicated that her earlier failure to provide information about Chavarria was because she was "extremely frightened" of him. He also argued that defense counsel would have ample opportunity to question the victim on the source of her testimony and to object to any hearsay statements, and that her testimony should not be precluded based on defense counsel's "assumptions." The court denied the motion to preclude, reasoning that "that's . . . an issue that will end up being addressed at the trial on a question by question basis," and noted that defense counsel would "have every opportunity at trial to either object to the form of the question, or to cross-examine the victim with

regards to how she came about [the information] and it does go to the weight, but not the admissibility."

¶8        Hearsay is a statement other than one made by a declarant testifying at trial offered to prove the truth of the matter asserted and is generally inadmissible at trial. Ariz. R. Evid. 801, 802. The Confrontation Clause prohibits the admission of testimonial hearsay at a criminal trial unless the declarant is available at trial for cross-examination or the declarant is unavailable and defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59, 68 (2004).

¶9        The court did not abuse its discretion or err by admitting the victim's testimony. Chavarria's pretrial argument that the victim would simply relay information she obtained from the anonymous source was based on sheer speculation, an insufficient basis for preclusion. Nor did the victim's testimony at trial bear out this speculation. The victim testified at trial that she based her testimony on her own personal knowledge, not what the anonymous source told her. She denied accepting at face value what the anonymous source relayed to her and specifically denied testifying about an identifying tattoo on Chavarria's forearm based on what the anonymous source told her. She testified that she had pointed Chavarria out in the photo line-up based on what she had seen and not what anyone else had told her. She also testified that she identified Chavarria as the ringleader and her chief assailant from personal knowledge. The victim's testimony accordingly did not impermissibly convey hearsay statements to the jury, nor did it violate Chavarria's confrontation rights.

¶10        The testimony at trial revealed that the anonymous source's information may have merely assisted the victim in recalling the tattoo on Chavarria's forearm and in providing police investigative leads. The victim testified on cross-examination that she had relayed some information to police that she had obtained from the anonymous source, but specifically acknowledged only relaying information that she believed a person named "Alejandra" owned the car Chavarria was driving during the kidnapping, and that someone nicknamed "Compa Vic" might have been involved.[1] A

---

[1]        The victim acknowledged that she had told the police that the picture of Chavarria in the line-up might be "Compa Vic," a nickname she had heard from Alejandra. She had also told the officer conducting the line-up, however, that the photo of Chavarria looked familiar and he might have been involved and she testified that this identification was from her personal knowledge, and not anything anyone else had told her. Although

detective who interviewed Alejandra before trial testified that he had learned for the first time at trial that she could have been the victim's anonymous source. He testified that he believed Alejandra owned the car at issue, but had been unable to verify that she was the owner, and found that Alejandra had no information that would have assisted in the investigation. The detective testified, however, that the victim told him that she remembered Chavarria had the identifying tattoo on his forearm during a conversation with the anonymous source. He also testified that the address the anonymous source gave the victim for Chavarria eventually led police to get in touch with him. Chavarria cannot claim that any of this testimony—none of which was offered for the truth of the matter asserted and most of which defense counsel elicited for impeachment purposes—was impermissible under the evidentiary rules or the Confrontation Clause.

¶11            Moreover, the court invited defense counsel to object at trial to the form of any questions and to cross-examine the victim on the bases for her testimony. And Chavarria's counsel argued at length in closing that the victim's testimony was not to be believed because she was simply relaying information she had obtained from police reports and the anonymous source. On this record, the court neither abused its discretion nor erred by refusing to preclude the victim's testimony as to information she disclosed after contact with the anonymous source.

## 2. Denial of Motion to Preclude In-Court Identification

¶12            Chavarria argues that the court violated his due process rights by allowing the victim to identify him in court two years after the kidnapping, when she had been unable to positively identify him in a photographic line-up before trial. He argues that the in-court identification was tainted by the photographic line-up and was not reliable. Because Chavarria failed to raise a due process issue below with respect to the identification of defendant before or at trial, we review this claim for fundamental error only. *See State v. Henderson*, 210 Ariz. 561, 568 ¶ 22 (2005); *see also State v. Bolton*, 182 Ariz. 290, 304 (1995) (holding that an objection on one ground does not preserve an issue on another ground). On fundamental error review, defendant has the burden of proving that the court erred, that the error was fundamental, and that he was prejudiced thereby. *Henderson*, 210 Ariz. at 567 ¶ 20.

---

the victim testified that Chavarria might be "Compa Vic," J.L. testified that Chavarria was the person he knew as "Queso."

¶13         Before trial, Chavarria moved to preclude the victim's in-court identification of him and any testimony that she had pointed to Chavarria in the pretrial photographic line-up and said he looked familiar, on the ground that any probative value of the tentative pretrial identification was substantially outweighed by the risk of unfair prejudice. The court denied the motion to preclude, reasoning, "[t]hat's something that can be addressed at trial." The victim positively identified Chavarria at trial without objection and testified that identifying him in person was easier than in the photographic line-up.

¶14         Chavarria has failed to meet his burden of proving fundament error. The Due Process Clause of the Fourteenth Amendment "requires us to ensure that any pretrial identification procedures are conducted in a manner that is fundamentally fair and secures the suspect's right to a fair trial." *State v. Lehr*, 201 Ariz. 509, 520 ¶ 46 (2002). A defendant who challenges an unduly suggestive pre-trial identification procedure is entitled to a hearing, at which the State is required to prove by clear and convincing evidence that the pre-trial identification procedure was not unduly suggestive. *State v. Dessureault*, 104 Ariz. 380, 384 (1969). "But the due process clause does not preclude every identification that is arguably unreliable; it precludes identification testimony procured *by the state* through unduly suggestive pretrial procedures." *Goudeau*, 239 Ariz. at 455 ¶ 130 (2016). "The due process check for reliability . . . comes into play only after the defendant establishes improper police conduct." *Perry v. New Hampshire*, 565 U.S. 228, 241 (2012).

¶15         Chavarria argues on appeal only that the witness's pretrial identification was "problematic" because "it had been almost two years since the incident," "the victim's new determination to identify Mr. Chavarria was solely based on information provided to her from an anonymous source that the State had not disclosed to the defense," and she did not positively identify him in the photographic line-up. Chavarria has not, however, identified any improper police conduct or unduly suggestive procedures employed by police during the pretrial photographic line-up. Nor did the identification of Chavarria at trial involve any police conduct. Accordingly, his due process claim fails. *See id.* at 248.

### 3. Denial of Mistrial

¶16         Chavarria argues that the court abused its discretion by denying his motion for mistrial and dismissal based on the prosecutor's misconduct in asking the victim if anybody had had sexual contact with her and then by incorrectly commenting, "[a]ctually, it's part of the indictment,

Judge." We will not disturb a trial court's denial of a mistrial for prosecutorial misconduct in the absence of a clear abuse of discretion. *State v. Newell*, 212 Ariz. 389, 402 ¶ 61 (2006).

¶17        After the prosecutor's comment, an unrecorded bench conference followed and the prosecutor subsequently moved on to a different line of questioning. The prosecutor later informed the court that he had been mistaken, that the sexual contact had been alleged in the first indictment, but not in the current indictment, which a different prosecutor had prepared. The court also noted that when the parties looked at the indictment at the bench, "[i]t was apparent to me that [the prosecutor] did not know that it was not in there[.]"

¶18        The next day, Chavarria moved for mistrial or dismissal. Defense counsel acknowledged that he did not believe the error was intentional. The court denied the mistrial, but offered to give a curative instruction and asked counsel to "take a look at these." Defense counsel responded, "I'm fine with the curative instruction."

¶19        The court subsequently instructed the jury that when the prosecutor asked the victim "if there was any sexual contact while she was being held by captors[,]" he "was mistaken when he asked that question." The court noted that it had sustained an objection to the question, and reminded the jury of the preliminary instructions that "a question by itself is not evidence, and if the Court sustains an objection to a question, you are to disregard the question, and you are to determine the facts of this case only from the evidence produced in court." The court concluded, "[s]ince the mistaken question is not evidence, you must disregard the question in its entirety and not consider it for any purpose[.]"

¶20        The court did not abuse its discretion by giving a curative instruction rather than declaring a mistrial. A declaration of mistrial is "the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Dann*, 205 Ariz. 557, 570 ¶ 43 (2003). In determining whether to grant a mistrial, a judge should consider (1) whether the testimony called the jurors' attention to matters that they would not be justified in considering in reaching a verdict and (2) the probability under the circumstances that the remarks influenced the jurors. *State v. Bailey*, 160 Ariz. 277, 279 (1989). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Morris*, 215 Ariz. 324, 335 ¶ 46 (2007).

¶21 Here, the trial judge determined that a mistrial was not warranted and that a curative instruction would eliminate any prejudice. The prosecutor's question about sexual contact and his comment, "[a]ctually, it's part of the indictment, Judge[,]" was brief, isolated, and never repeated. Although defense counsel suggested that the comment about the indictment was loud enough to be heard by the jury, whether the jury would have taken the comment at face value if heard is unclear because the indictment read to the jury the previous day did not contain any such allegation. Moreover, considering Chavarria's defense as outlined in his opening statement—that no doubt the victim had suffered horribly, but he was not involved—any unfair prejudice was minimal if it existed at all. Under these circumstances, the court did not abuse its discretion by finding that the extraordinary remedy of a mistrial was not necessary and that an instruction ordering the jury to ignore the improper question would suffice.

¶22 Furthermore, because Chavarria expressly agreed that he was "fine" with the curative instruction the court prepared, the failure of the court to sua sponte add language to address the prosecutor's improper comment was invited error. *See State v. Parker*, 231 Ariz. 391, 405 ¶ 61 (2013) ("Parker's stipulation to admit the videotaped interviews precludes him from asserting on appeal that their admission was error."); *see also State v. Pandeli*, 215 Ariz. 514, 528 ¶ 50 (2007) (defense counsel invited error in admission of evidence by explicitly stating that he did not object and by agreeing it was other act evidence). In any case, the court also instructed the jury that it must determine the facts only from the evidence produced in court, and what the lawyers say is not evidence. The jury is presumed to have followed this instruction as well as the specially prepared curative instruction. *Newell*, 212 Ariz. at 403 ¶ 68. Under these circumstances, the court did not abuse its discretion by concluding that a mistrial was not warranted.

¶23 Although defense counsel briefly mentioned to the trial court that he was requesting a dismissal, he made no argument before the trial court in support of this even more drastic remedy and has made none on appeal. He accordingly has waived this claim of error. *See State v. Moody*, 208 Ariz. 424, 452 n.9 ¶ 101 (2004) (failure to present significant arguments supported by authority in an opening brief waives the issue).

### 4. Denial of Motion to Preclude for Discovery Violation

¶24 Chavarria argues the court abused its discretion by denying his motion to preclude 179 pages of discovery, along with multiple DVDs, CDs, and audiotapes the State produced 7 days before the original trial date

and 20 days before the final trial date. We review a trial court's choice and imposition of sanctions for a violation of the discovery rules for an abuse of discretion, and "we will find an abuse of discretion only when no reasonable judge would have reached the same result under the circumstances." *State v. Naranjo*, 234 Ariz. 233, 242 ¶ 29 (2014). "We may affirm on any basis supported by the record." *State v. Robinson*, 153 Ariz. 191, 199 (1987).

¶25        At oral argument on the motion to preclude, defense counsel noted that he was not alleging that the State had failed to produce the discovery deliberately or for a tactical advantage. The prosecutor avowed that the failure to disclose the material earlier had been "absolutely inadvertent." Defense counsel further acknowledged that "[a]t this point I can't claim any personal prejudice or prejudice to the case. I have the information, and the two weeks is—I wouldn't say ideal, but I'll do what I have to do with that time." The court denied the motion in view of defense counsel's acknowledgment that neither he nor his client suffered any prejudice from the late disclosure, although the court found "it would be preferable to have this earlier."

¶26        The court did not abuse its discretion by denying Chavarria's motion to preclude the late-disclosed evidence. As an initial matter, defense counsel failed to file "a separate statement . . . certifying that, after personal consultation and good faith efforts to do so, counsel have been unable to satisfactorily resolve the matter," as required for consideration of a motion for sanctions. *See* Ariz. R. Crim. P. 15.7(b) (2008). The court's denial of the motion to preclude was permissible on this ground alone. *See Robinson*, 153 Ariz. at 199.

¶27        The court also acted well within its discretion by denying the motion on its merits. "Preclusion is rarely an appropriate sanction for a discovery violation, and should be invoked only when less stringent sanctions would not achieve the ends of justice." *Naranjo*, 234 Ariz. at 242 ¶ 30 (internal citation omitted). Before precluding evidence, the court should consider how vital the evidence is, whether the evidence will surprise or prejudice the opposing party, and whether bad faith motivated the discovery violation. *See id.*

¶28        Here, the parties agreed that the disclosure violation was inadvertent and that the late disclosure did not prejudice the defense. Chavarria's speculation for the first time on appeal that "perhaps" the case might have proceeded differently had the material been disclosed earlier is insufficient to show prejudice. Under these circumstances, the court acted

well within its discretion by denying the motion for preclusion and not imposing any sanction. *See State v. Martinez-Villareal*, 145 Ariz. 441, 448 (1985) ("In order for a reviewing court to find an abuse of discretion, appellant must demonstrate that he suffered prejudice by nondisclosure."); *see also State v. Lee*, 185 Ariz. 549, 556 (1996) ("The trial court's failure to impose a particular sanction, or any sanction at all, was not an abuse of discretion[]" because defendant "suffered no prejudice here.").

### 5. Denial of Motion for Acquittal

**¶29**        Chavarria argues that the court erred by denying his motion for judgment of acquittal on the dangerousness allegation with respect to the charge of theft by extortion because the evidence showed only the use of telephones in this offense and not the use of deadly weapons or dangerous instruments. We review de novo the sufficiency of the evidence to support a conviction. *State v. West*, 226 Ariz. 559, 562 ¶ 15 (2011). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16. "[W]hen reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *Id.* at 563 ¶ 18.

**¶30**        Chavarria was convicted of theft by extortion for "knowingly obtaining or seeking to obtain property or services by means of a threat to . . . [c]ause physical injury to anyone by means of a deadly weapon or dangerous instrument." *See* A.R.S. § 13–1804(A)(1) (2008). A "dangerous offense" is in pertinent part "an offense involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument[.]" A.R.S. § 13–105(13).

**¶31**        The evidence was more than sufficient to support a finding that the theft by extortion involved the use of a deadly weapon or dangerous instrument. The victim testified that she was kidnapped at gunpoint, beaten with a wire, pistol-whipped, and threatened with a gun throughout her three days in captivity. She also testified that the kidnappers told her that they would kill her if her family did not get the money and that they would kill her children in front of her. And according to J.L.'s testimony, Chavarria also demanded that the victim herself pay the ransom. He testified that Chavarria "told her you better give us the money we're asking for . . . you need to tell your family to pay up or else this is going to happen to you," and then Chavarria made her touch the gun. On this record, more than sufficient evidence existed to support the jury's

finding that a deadly weapon—the gun—was used to extort the ransom from the victim and to persuade the victim to convince her family to pay the ransom. As such, the evidence was more than sufficient to support the jury's finding that this was a "dangerous offense" for sentencing purposes. *See State v. Mendoza-Tapia*, 229 Ariz. 224, 229 ¶¶ 14–16 (App. 2012) ("Whether the family knew about the threat to use a gun was inconsequential.").

### 6. Failure to *Voir Dire* Jurors

**¶32** Chavarria argues that the court erred by failing to *voir dire* jurors to determine if any had been improperly influenced by the demeanor or mumblings of another juror who was excused on that basis or by the absence of Chavarria from the verdict's delivery. Chavarria failed to ask for *voir dire* of the jurors or the panel in either instance, and we therefore review his claim of error for fundamental error only. *See State v. Nelson*, 229 Ariz. 180, 184 ¶ 9 (2012).

**¶33** On the second day of trial, the parties stipulated to remove a juror who was "mumbling under his breath." Defense counsel stated that he had no objection to the juror being excused and did not ask for *voir dire* of the other jurors to ascertain if they had been tainted by his conduct. On the trial's seventh day, Chavarria did not appear for the verdict's delivery. Before the aggravation phase—and without objection—the court instructed the jury that Chavarria had a right to choose not to be present and "[y]ou cannot consider his choice of not being present here today for this hearing in any way in your determination of whether aggravating circumstances exist." After the jury delivered its verdict on aggravating circumstances, and had been excused, the court noted, "[f]or the record, one of the jurors—one of the excused jurors has asked on behalf of the entire jury whether or not we have information as to whether—as to where Mr. Chavarria is."

**¶34** The court noted that "it sounds to me like they're concerned for their own safety," and proposed telling the jury panel that the parties did not know his location, but that a warrant had been issued for his arrest. The court also proposed offering security to escort individual jurors to their cars if they wanted. Defense counsel offered to "say something to them to give them peace of mind[,]" and the court agreed "[t]hat would be helpful." Defense counsel, however, did not ask for any *voir dire* to ascertain if the jurors had failed to follow the court's instruction not to consider Chavarria's absence in determining aggravating circumstances.

¶35 Chavarria has not met his burden to show that fundamental error occurred. As an initial matter, Chavarria failed to cite any case that would require the court to sua sponte *voir dire* the jurors under these circumstances. He accordingly has failed to show that the court erred in not doing so here. Moreover, juror misconduct warrants a new trial only if the appellant shows actual prejudice, or if prejudice may fairly be presumed. *See State v. Davolt*, 207 Ariz. 191, 208 ¶ 58 (2004). "In a criminal case, prejudice may be presumed from any private communication, contact or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury." *Id.* "Once the defendant shows that the jury has received and considered extrinsic evidence, prejudice must be presumed and a new trial granted unless the prosecutor proves beyond a reasonable doubt that the extrinsic evidence did not taint the verdict." *State v. Hall*, 204 Ariz. 442, 447 ¶ 16 (2003).

¶36 In neither of these instances has Chavarria shown that any of the jurors received any private communication, contact, or tampering, directly or indirectly, about the matter pending before the jury. Prejudice accordingly may not be presumed, and Chavarria must show actual prejudice. *See Davolt*, 207 Ariz. at 208 ¶ 58. Chavarria has not shown any actual prejudice, and accordingly his claim that the court erred, requiring a new trial, fails.

### 7. Use of Improper Aggravators

¶37 Chavarria argues that the court violated his double jeopardy rights in sentencing him based on findings of dangerousness and aggravating circumstances that comprised elements of the offenses themselves, some of which were duplicative of each other and others of which the evidence did not support. The jury found each of the offenses was a dangerous offense. Ordinarily, we review a sentence within the range prescribed by the legislature for an abuse of discretion. *State v. Tschilar*, 200 Ariz. 427, 435 ¶ 32 (App. 2001). "[W]hether a particular aggravating factor used by the court is an element of the offense and whether the court properly can use such a factor in aggravation are questions of law, which we review *de novo*." *Id.*

¶38 The jury found as aggravating circumstances that each of the offenses also involved (1) the infliction or threatened infliction of serious physical injury; (2) the taking of or damage to property in an amount sufficient to be an aggravating circumstance; (3) the presence of an accomplice; (4) the defendant's committing of the offense in an especially heinous, cruel, or depraved manner; (5) the defendant's committing of the

offense as consideration for the receipt or in the expectation of the receipt of anything of pecuniary value; (6) physical, emotional, or financial harm caused to the victim; and (7) the defendant's lying in wait for the victim or ambushing the victim during the commission of any felony, specifically kidnapping. The court imposed aggravated sentences on each of his convictions based on these aggravating circumstances, a prior conviction, and Chavarria's five years as a fugitive.

¶39      Chavarria made no objection, however, to the jury's findings or to the court's use of them in sentencing him. We accordingly review the issues he raises on appeal for fundamental error only. *See Henderson*, 210 Ariz. at 568 ¶ 22. On fundamental error review, the defendant has the burden of proving that the court erred, that the error was fundamental in nature, and that he was prejudiced thereby. *Id.* at 567 ¶ 20.

### 7a. Double Jeopardy

¶40      Chavarria argues that the court violated his double jeopardy rights against "multiple punishments for the same offense" by improperly using "the same facts for purposes of conviction as well as for purposes of finding numerous aggravators" and considering aggravators that were "part and parcel of the crime[.]" He also argues that the dangerousness finding was improper on the same basis because the use of a deadly weapon or dangerous instrument was an element of aggravated assault and arguably formed the basis for the convictions for kidnapping and theft by extortion.

¶41      The law is well-established, however, that "neither double jeopardy nor double punishment considerations prevent the legislature from establishing a sentencing scheme such as Arizona's in which an element of a crime may also be used for sentence enhancement and aggravation." *State v. Alvarez*, 205 Ariz. 110, 113 ¶ 7 (App. 2003). This is because "the question under the Double Jeopardy Clause whether punishments are multiple is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); *Missouri v. Hunter*, 459 U.S. 359, 368 (1983). Because each of the factors found by the jury was a specifically enumerated aggravating factor, *see* A.R.S. § 13–702(C)(1), (3)–(6), (9), and (17) (2008), the trial court was authorized to aggravate Chavarria's sentences based on those facts regardless whether the conduct exceeded the minimum level necessary to establish an element of the crimes. *See Tschilar*, 200 Ariz. at 435 ¶ 33; *see also Alvarez*, 205 Ariz. at 113–14 ¶¶ 8–11.

¶42    The legislature has expressly prohibited the use of "infliction or threatened infliction of serious physical injury" as an aggravator "if this circumstance is an essential element of the offense of conviction or has been utilized to enhance the range of punishment under § 13–704." *See* A.R.S. § 13–701(D)(1). The infliction or threatened infliction of serious physical injury, however, was not an essential element of any of the offenses of which Chavarria was convicted. The offenses, rather, had as elements only the intent to inflict physical injury (kidnapping), a threat to cause future physical injury (theft by extortion), and reasonable apprehension of immediate physical injury (aggravated assault). *See* A.R.S. §§ 13–1304(A)(3) (2008) (kidnapping), –1804(A)(1) (2008) (theft by extortion), –1203(A)(2) (2008) and –1204(A)(2) (2008) (reasonable apprehension of assault aggravated by use of deadly weapon). Use of this aggravator accordingly complied with the governing statute.

## 7b. Double Counting

¶43    Chavarria argues that the court improperly considered the same conduct as the basis for multiple aggravators. This argument fails because one set of circumstances can properly be used to satisfy more than one aggravating factor identified. As discussed, without violating double jeopardy protections, "the legislature may authorize using the same fact or circumstances in more than one way as part of a complex, multiple-step process by which trial courts determine the appropriate sentence for a particular crime. . . ." *Alvarez*, 205 Ariz. at 113 ¶ 8; *see generally* A.R.S. § 13–702(C) (2008). Even in the capital sentencing context, a sentencing court may consider two aggravators based on the same conduct because each individual aggravator "serve[s] different public policy rationales[.]" *State v. Carlson*, 237 Ariz. 381, 399 ¶ 73 (2015). The court did not err, much less fundamentally err, by using the same factual circumstances to support multiple aggravators.

## 7c. Sufficient Evidence

¶44    Chavarria also argues that the evidence did not support the aggravators for the taking of or damage to property and pecuniary motive because "there was no actual financial or pecuniary gain obtained," and the victim's car was later recovered. We disagree. The evidence that the victim's car was taken, although not permanently, supported the first aggravator. The ransom that Chavarria sought to obtain by committing the offenses was sufficient to support the second aggravator. *See* A.R.S. § 13–702(C)(6) (2008) ("The defendant committed the offense . . . in the expectation of the receipt,

of anything of pecuniary value."). Therefore, the court did not err by applying these aggravators.

## 8. Court's Findings of Aggravators

**¶45**        Chavarria finally argues that the court violated his rights under *Blakely v. Washington*, 542 U.S. 296 (2004) by using as aggravators—without a jury finding—an undisclosed prior conviction and his five years as a fugitive from justice. Defense counsel acknowledged at sentencing that Chavarria had a felony conviction in 2000 for theft of means of transportation, and Chavarria acknowledged to the presentence report writer that he had been "on the run" and had been residing in Juarez, Mexico with a friend for five years. Chavarria did not object to use of these aggravators in sentencing him. We accordingly review this issue for fundamental error only. *See Henderson*, 210 Ariz. at 568 ¶ 22.

**¶46**        The court did not err by finding these additional aggravating circumstances and using them in imposing an aggravated sentence. In determining the sentence, the court must consider specified aggravating circumstances and "[a]ny other factor that the state alleges is relevant to the defendant's character or background or to the nature or circumstances of the crime." A.R.S. § 13–701(D)(24) (2008). Once the jury found the existence of any aggravating circumstances, the court was free (consistent with *Blakely*) to consider additional factors related to imposition of an aggravated sentence, including the prior conviction and Chavarria's flight from the jurisdiction. *See State v. Martinez*, 210 Ariz. 578, 585 ¶ 26 (2005).

**¶47**        Chavarria also argues in passing that the State failed to properly disclose the prior felony conviction and notify him that it intended to use it as an aggravating circumstance. Chavarria, however, has made no significant argument supporting this claim, and accordingly has waived this claim of error. *See Moody*, 208 Ariz. at 452 n.9 ¶ 101 (failure to present significant arguments supported by authority in an opening brief waives the issue).

**¶48**        The State, moreover, did notify Chavarria that it intended to use any felony convictions not used for enhancement as an aggravating circumstance. The State further avowed that "the State has provided a list of the defendant's prior felony convictions in a separate allegation." Although the record fails to contain a separate allegation of prior felony convictions, Chavarria acknowledged at sentencing that he had the felony conviction at issue. Under these circumstances, Chavarria has not shown

that the court fundamentally erred, to his prejudice, by using the prior felony conviction as an aggravator.[2]

## CONCLUSION

**¶49**       For the foregoing reasons, we affirm Chavarria's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA

---

[2]       In Chavarria's Reply Brief and at oral argument, he raised a separate argument that the State "flirt[ed] with prosecutorial misconduct" in its arguments made on appeal. But Chavarria has provided no legal authority for the proposition that the State's legally supported arguments on appeal amount to prosecutorial misconduct. Nor has he provided any support to establish that this issue is properly raised on direct appeal and not instead proper in a petition for post-conviction relief under Arizona Rule of Criminal Procedure 32.