NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

TIMOTHY RAYMOND SUTTER, *Appellant.*

No. 1 CA-CR 19-0348
FILED 6-11-2020

Appeal from the Superior Court in Apache County
No. S0100CR201800052
The Honorable C. Allen Perkins, Judge Pro Tempore

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

The Ferragut Law Firm PC, Phoenix
By Ulises A. Ferragut, Jr.
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Chief Judge Peter B. Swann joined.

**H O W E**, Judge:

¶1 Timothy Sutter appeals his two sexual conduct with a minor convictions. He also appeals the denial of his motions to vacate the judgment and for a new trial. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 O.G. met Sutter through church when she was eight years old. Sutter was close with O.G. and her family and often went to O.G.'s house for dinner. When O.G. was eight, she fell off a trampoline while playing with other kids and broke her arm. O.G.'s parents were not there, so Sutter picked her up, put her head on his chest, and said, "[n]o, don't move; I'm going to take care of you for the rest of your life. Stay there." Sutter grew closer with O.G. and, when O.G. was 11, Sutter kissed her. Sutter was in his mid-30s at time.

¶3 In 2001, when O.G. was about 12, Sutter came over to her house while her parents were working to play her a recorded song. While the song was playing, Sutter hugged O.G. from behind and slid his hands into O.G.'s underwear and first touched, and then put his finger inside her vagina. After the song ended, Sutter kissed O.G. and left.

¶4 Around August 2004, when O.G. was 16, she and her family moved to another town. Sutter remained close with O.G. and her family and started buying O.G. gifts, including high heels, a purse, a stereo, paint for her bedroom, and a phone she could use to text him. Around the summer of 2004, before O.G.'s sister moved to Ecuador, she saw Sutter touch O.G.'s bottom when he helped her climb over a fence to get a ball.

¶5 On one occasion in 2004, Sutter asked O.G. to call her mother to make sure she was not coming home from work. When O.G. told Sutter that her mother was not coming home, he came over to her house. While the two were sitting on the couch, Sutter told O.G. that he wanted to have sex. Sutter unzipped his pants and told O.G. that it would hurt less if she sat on him. O.G. tried sitting on him but it hurt. Sutter got mad, pushed her off him, and left.

¶6 In late 2004, Sutter came over and brought towels with him. Sutter and O.G. went into her room where he told her to get naked. After O.G. was naked, Sutter told her that he wanted to "do oral first." After that, O.G. laid down and Sutter "shoved his penis inside" her, which caused O.G. to bleed "everywhere." Sutter cleaned up the blood with the towels he brought, told O.G. to take a bath, and left.

¶7         Sutter wrote and emailed a poem to O.G. in November 2004, that another church member discovered in December 2004, when he found the email in his printer. The poem stated in part that "I yearn to hold you. I crave your touch, to whisper in your ear, to caress you softly, to press my lips against your body. To bring you passionate pleasure makes me so very happy." The church member brought the poem to the church's attention and a few weeks later, Sutter said to him, "[t]hank you for bringing it out before it went any further." The church told O.G.'s parents about Sutter's relationship with O.G. Sutter apologized to O.G.'s parents and asked for forgiveness.

¶8         O.G.'s parents were ashamed of her and sent her to live with a friend in Indiana for about six months and then to live with her older sister in Ecuador. O.G. returned from Ecuador after about six months and moved out on her own when she turned 18. O.G. did not report Sutter to police at that time because her parents told her not to. But she eventually did so in July 2016, after she smelled the same cologne Sutter used to wear. In August 2016, O.G. met with a forensic interviewer and told her about Sutter and the sexual acts he engaged in with her. Sutter first learned about the charges after a friend saw them on the internet. Sutter told his friend that "it's something that happened 15 years ago" and that "[i]t's the statute of limitation, I thought it was up on stuff like that but apparently not."

¶9         The State initially charged Sutter with child molestation and three counts of sexual conduct with a minor.[1] Before trial, Sutter moved to preclude other act evidence. The court denied the motion as untimely and because it did not identify the acts Sutter sought to preclude. After the State filed its proposed jury instructions, Sutter objected to the inclusion of other act evidence instructions, arguing that other act evidence could not be admitted without a hearing and that the State did not disclose the other act evidence. The State then moved to admit other act evidence arguing that it did disclose the other acts and requested a hearing at the start of trial.

¶10         On the first and second day of trial, the court and the parties discussed the motions. Sutter argued that the following incidents were inadmissible as "other act" evidence under Arizona Rule of Evidence 404(b): (1) Sutter's picking up O.G. and whispering to her when she broke her arm, (2) Sutter's giving O.G. various gifts, and (3) Sutter's touching O.G.'s bottom while helping her climb over a fence. In response to Sutter's argument for a hearing, the State argued that no hearing was required. The

---

[1]    The State subsequently dismissed one of the counts of sexual conduct with a minor.

court found that these "other acts" were inadmissible under Arizona Rule of Evidence 404(b) because it believed that it could not make a clear and convincing evidence finding at the start of the trial. The court found that the other act evidence was admissible, however, as intrinsic evidence.

¶11　　　　Trial was held in April 2019, and during cross-examination of the forensic interviewer, Sutter's counsel asked, "[O.G.] told you that all of the incidents that took place in her particular case happened in Eager except for one. Correct?" The forensic interviewer responded that "[s]he spoke of other places, going to church functions, out of town to Phoenix, in-between Tucson, that there were times while they were driving where . . . he would then touch her on her vaginal area." The following day, Sutter objected to this testimony and moved for a mistrial. The court denied the motion because the forensic interviewer's answer was in response to a question that Sutter's counsel had asked concerning "all of the incidents."

¶12　　　　During his opening statement, Sutter's counsel brought up his grandchildren stating that "I have a grandson and a granddaughter who will play a role in this trial." He discussed his grandkids again during closing arguments when talking about fairness. In counsel's closing argument, he discussed O.G.'s motives for bringing sexual allegations against Sutter and argued "[s]o this rich, white guy, who ruined her life . . . turned her into a scorned woman, is nothing but a rich, white guy. 'We are poor Mexicans, and he is a rich, white guy, and I'm going to get him.'"

¶13　　　　During rebuttal closing, the prosecutor responded that O.G. made those statements when asking herself why Sutter targeted her, "[b]ecause she was . . . from a poor Mexican family . . . [a]nd he was a rich, white guy." The prosecutor also said,

> [Defense counsel] spoke a few times about his family, his grand kids, and I get that. I think it's normal. We deal with these heavy cases, we have family of our own to think about, our family. And I have a 15-year-old daughter. Trust me, I've thought a lot about her over the course of this case. And you all have family as well, daughters, sisters. And you need to consider your daughters and granddaughters.

Sutter objected to the prosecutor's comment that the jurors should consider their families, and the trial court sustained the objection. Before closing arguments, the court had instructed the jurors that "[i]f the Court sustained an objection to a question, you must disregard it and any answer given" and that "[w]hat the lawyers said is not evidence[.]"

¶14        The jurors deliberated and convicted Sutter of child molestation, sexual conduct with a minor under the age of 15, and sexual conduct with a minor under the age of 18. Before sentencing, Sutter moved for a new trial, arguing that the State engaged in misconduct, that the other act evidence was inadmissible, and that the court failed to give a jury instruction when the forensic interviewer introduced other act evidence. The trial court denied the motion. Sutter also moved to vacate the judgment on May 24, 2019, before sentencing on May 31, 2019. The trial court denied that motion because, among other things, Sutter had filed the motion before sentencing.

¶15        At sentencing, Sutter moved to dismiss count one, child molestation, as a lesser-included offense of count two, sexual conduct with a minor under the age of 15. The trial court agreed and dismissed count one, child molestation. Sutter was then sentenced to a mitigated term of 18 years' imprisonment with 79 days' presentence incarceration credit on count two, sexual conduct with a minor under the age of 15. The court suspended the imposition of sentence on count three, sexual conduct with a minor under the age of 18 and placed Sutter on 20 years' supervised probation for that conviction. Sutter timely appealed.

## DISCUSSION

### 1. Venue

¶16        Sutter argues that his convictions should be reversed because the State failed to "formally establish" that the towns of Springerville and Eager were in Apache County. A criminal defendant has the right to a "trial by an impartial jury of the county in which the offense is alleged to have been committed." Ariz. Const. art. II, § 24. Venue may be established by either direct or circumstantial evidence. *State v. Detrich*, 178 Ariz. 380, 384 (1994). A trial court and this Court may take judicial notice that a town is in an Arizona county. *Id.* O.G. testified that Sutter committed the charged offenses in the towns of Springerville and Eager. As a result, we may take judicial notice that those towns are in Apache County, Arizona. *See Id.* Therefore, the State properly established jurisdiction.[2]

### 2. Other Act Evidence

¶17        Sutter argues that the trial court erred by admitting other act evidence because such evidence was not intrinsic to the charged crimes.

_____

[2]        For this reason, Sutter's argument that the Double Jeopardy Clause of the United States and Arizona Constitutions bar a retrial is moot.

Sutter argues specifically that the trial court erred by admitting evidence that (1) he picked up O.G. and whispered to her when she broke her arm, (2) he gave O.G. various gifts, and (3) he touched O.G.'s bottom while helping her climb over a fence. We review a trial court's ruling about the admissibility of evidence for an abuse of discretion. *State v. Winegardner*, 243 Ariz. 482, 484 ¶ 5 (2018). Evidence is intrinsic if it "directly proves the charged act" or "is performed contemporaneously with and directly facilitates commission of the charged act." *State v. Ferrero*, 229 Ariz. 239, 243 ¶ 20 (2012). The intrinsic evidence doctrine may not be invoked to "complete the story." *Id.*

**¶18** The State concedes that none of the admitted other act evidence is intrinsic. Evidence that Sutter picked up O.G. after she broke her arm when she was eight does not directly prove Sutter committed the sexual conduct with a minor offenses and did not occur contemporaneously with those crimes. Likewise, evidence that Sutter gave O.G. gifts and touched her bottom while helping her climb over a fence do not directly prove that Sutter committed the sexual conduct with a minor offenses and did not occur contemporaneously with those crimes. Because the other act evidence was not intrinsic, the trial court erred by admitting the evidence as intrinsic to the crimes charged.

**¶19** The State argued at trial, and now argues on appeal, however, that the other act evidence was admissible under Arizona Rule of Evidence ("Rule") 404(b) to show motive, preparation, and to "complet[e] the story." This Court must affirm the trial court for any reason if the record contains substantial evidence that the requirements of admissibility were met. *State v. Aguilar*, 209 Ariz. 40, 50 ¶ 37 (2004). Other act evidence is not admissible to prove the character of a person but may be admissible for another purpose such as proof of motive and preparation. Ariz. R. Evid. 404(b). To admit other act evidence, the State must prove by clear and convincing evidence that the defendant committed the other acts, that they are offered for a proper purpose, that they are relevant, and that their probative value is not substantially outweighed by a danger of unfair prejudice. *State v. Goudeau*, 239 Ariz. 421, 450 ¶ 96 (2016). Contrary to Sutter's argument, a party has no automatic right to a separate hearing on the admissibility of Rule 404(b) evidence. *See State v. LeBrun*, 222 Ariz. 183, 187 ¶ 13 (App. 2009).

**¶20** Despite the trial court's declination to consider whether the other act evidence the State proffered was admissible under Rule 404(b), the record shows that the State met its admissibility requirements. First, the State presented clear and convincing evidence that Sutter committed the other acts. O.G. testified that Sutter picked her up when she broke her arm

and told her that "I'm going to take care of you for the rest of your life." She also testified that Sutter gave her gifts including a cell phone, a stereo, a purse, clothing, and paint so she could paint her room. O.G.'s sister confirmed that Sutter gave her a purse, that O.G. had brand name jeans and shoes, and testified that Sutter touched O.G.'s bottom when he helped her climb over a fence to get a ball. O.G.'s parents confirmed that Sutter gave her a phone and O.G.'s father testified that he smelled paint when he came home one day. This testimony sufficiently proved by clear and convincing evidence that Sutter committed the other acts.

¶21        Second, the other act evidence was relevant and offered for a proper purpose. The State argued that the evidence was offered to prove motive and preparation, and so the jurors would understand O.G. and Sutter's relationship. Third, the trial court properly could have found that the probative value of admitting the other act evidence was not substantially outweighed by a danger of unfair prejudice because the evidence did not have an undue tendency to suggest a decision on an improper basis, such as emotion, sympathy, or horror. *See State v. Hardy*, 230 Ariz. 281, 290 ¶ 40 (2012). Consequently, the other act evidence was properly admissible under Rule 404(b).

¶22        Even if the evidence was not admissible under Rule 404(b), however, its admission was harmless. An error is harmless "if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *State v. Lizardi*, 234 Ariz. 501, 506 ¶ 19 (App. 2014) (quoting *State v. Bible*, 175 Ariz. 549, 588 (1993)). An error may be harmless when overwhelming evidence of guilt exists. *Id.*

¶23        Any error did not affect the verdict because the evidence of Sutter's guilt was overwhelming. "A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse . . . with any person who is under eighteen years of age." A.R.S. § 13–1405(A). O.G. testified that when she was about 12, Sutter slid his hand into her pants, touched her vagina, and "put one of his fingers inside [her]." O.G. also testified that when she was 16, Sutter "shoved his penis inside me" in 2004 after her family moved to Eager. O.G. further testified that Sutter emailed O.G. a poem stating that "I yearn to hold you. I crave your touch, to whisper in your ear, to caress you softly, to press my lips against your body. To bring you passionate pleasure makes me so very happy."

¶24        O.G.'s parents testified that Sutter apologized for what he had done and had asked for forgiveness. A fellow church member also testified that Sutter thanked him "for bringing it out before it went any further."

And when a friend made Sutter aware of the charges after seeing them on the internet, Sutter responded that "it's something that happened 15 years ago" and that "[i]t's the statute of limitation, I thought it was up on stuff like that but apparently not."

¶25        Sutter also cross-examined O.G. and her family members about the other acts and elicited testimony that when O.G. broke her arm, the other kids had parents with them and he had stepped in to help because O.G.'s parents were not there. O.G. also admitted that she did not keep any of the gifts that she alleged Sutter gave her and her family members testified that they did not remember seeing some of the gifts. Last, during cross-examination of O.G., Sutter first introduced that he had helped O.G. climb over a fence (without mentioning that he touched her bottom). The State later elicited testimony from O.G.'s sister that Sutter touched her bottom while helping O.G. climb the fence and Sutter elicited testimony that O.G. did not remember this act. The evidence of Sutter's guilt was overwhelming.

¶26        Sutter nevertheless argues that the erroneous admission of the other act evidence is not harmless because the prosecutor discussed the other acts in closing argument and reminded the jurors about the various gifts Sutter had given O.G. Sutter's argument fails, however, because the other acts were a small part of the evidence of Sutter's guilt and, during closing arguments, the State minimized the value of the gifts stating that "a big deal is made about the gifts from the Defendant to [O.G.]. And that doesn't change what he did. Or whether he did it. Which is for you to decide." Because the evidence of Sutter's guilt was overwhelming regardless of the admission of the other acts, any error did not affect the jurors' verdicts.

### 3. Duplicitous Charge

¶27        Sutter argues that the introduction of other act evidence through the testimony of the forensic interviewer created a duplicitous charge which resulted in the possibility that the jurors reached a non-unanimous verdict. "A criminal defendant has the constitutional right to a unanimous jury verdict." *State v. West*, 238 Ariz. 482, 488 ¶ 13 (App. 2015). A duplicitous charge "alleges multiple crimes due to the presentation of evidence at trial[.]" *State v. Butler*, 230 Ariz. 465, 470 ¶ 13 (App. 2012). The trial court can remedy any duplicity by requiring the State "to elect the act which it alleges constitutes the crime, or instruct the jury that they must agree unanimously on a specific act that constitutes the crime before the

8

defendant can be found guilty." *State v. Klokic*, 219 Ariz. 241, 244 ¶ 14 (App. 2008) (quoting *State v. Schroeder*, 167 Ariz. 47, 54 (App. 1990)).

**¶28**        The State remedied any duplicity by electing which acts constituted the crimes charged. In closing arguments, the State told the jurors that count two, sexual conduct with a minor under the age of 15, occurred in 2001, "when the Defendant was 33 and [O.G.] was 13" and that the "Defendant penetrated [O.G.'s] vagina with his finger." The State further told the jurors that count three, sexual conduct with a minor under the age of 18, occurred in 2004, when "the Defendant laid her on the bed and penetrated her vagina with his penis." The State clearly specified which acts constituted each count of sexual conduct with a minor, thereby curing any potential duplicity that could lead to a non-unanimous verdict.

**¶29**        Additionally, even if the forensic interviewer's testimony created the potential for a non-unanimous verdict, Sutter invited the error. The invited error doctrine prohibits a defendant from injecting error into the trial and then profiting from it on appeal. *State v. Robertson*, 246 Ariz. 438, 440 ¶ 14 (App. 2019). Sutter invited any risk of a non-unanimous verdict when he asked the forensic interviewer if O.G. told her that "all of the incidents that took place in her particular case happened in Eager except for one. Correct?" Further, the court told Sutter that it would offer a limiting instruction or strike the testimony, if requested. Sutter, however, never requested one. As a result, Sutter invited any potential duplicity error and cannot profit from it on appeal.[3]

### 4. Prosecutorial Misconduct

**¶30**        Sutter argues that the prosecutor engaged in multiple acts of misconduct during the trial and during his rebuttal closing argument. We review any allegations of misconduct for either harmless error if Sutter objected, or fundamental error if Sutter failed to object. *See State v. Murray*, 247 Ariz. 583, 589 ¶ 9 (App. 2019). To prevail on a claim of prosecutorial misconduct, Sutter must show that misconduct occurred and a reasonable likelihood exists that the misconduct could have affected the verdict. *See id.* at ¶ 8. "Prosecutorial comments which are a fair rebuttal to areas opened by the defense are proper." *State v. Alvarez*, 145 Ariz. 370, 373 (1985).

---

[3]        Sutter's argument that the court was required to give a curative jury instruction fails because the State cured any duplicity. *See Klokic*, 219 Ariz. at 244 ¶ 14.

¶31        Sutter first argues that the prosecutor engaged in misconduct by failing to instruct the forensic examiner to limit her testimony to one incident of sexual conduct. Sutter argues that he was prejudiced "with the risk of a non-unanimous verdict." Because Sutter objected at trial only on duplicitousness grounds, he waived all but fundamental error on appeal. *See Murray*, 247 Ariz. at 589 ¶ 9. As previously discussed, the forensic interviewer's testimony did not prejudice Sutter because the prosecutor remedied any potential duplicity during closing argument and Sutter invited any error.

¶32        Sutter argues next that the prosecutor acted improperly by injecting race into the trial without supporting evidence. The prosecutor's statements about O.G. being "from a poor Mexican family" and that Sutter "was a rich, white guy" were proper because they were a fair rebuttal to Sutter's closing argument. During closing argument, Sutter argued, "[s]o this rich, white guy, who ruined her life . . . turned her into a scorned woman, is nothing but a rich, white guy. 'We are poor Mexicans, and he is a rich, white guy, and I'm going to get him.'" The prosecutor responded by clarifying that O.G.'s statements about Sutter being a "rich, white guy" and that she was "from a poor Mexican family" were made in the context of O.G.'s asking herself why Sutter chose to engage in sexual conduct with her. Because Sutter injected Sutter and O.G.'s ethnicities into his closing argument first, the prosecutor's rebuttal argument was proper. *See Alvarez*, 145 Ariz. at 373.

¶33        Sutter also argues that the prosecutor improperly argued that the jurors should consider the prosecutor's daughters. The prosecutor's statement was proper for two reasons. First, the prosecutor did not ask the jurors to consider his daughter when reaching a verdict. Rather, he said that "I have a 15-year-old daughter. Trust me, I've thought a lot about her over the course of this case." Second, the prosecutor's statement was a rebuttal to defense counsel's closing argument. Defense counsel first injected his family into the trial during opening statements, when he said, "I have a grandson and a granddaughter who will play a role in this trial." He referred to his grandchildren again during closing arguments while discussing fairness. The prosecutor's comment about his family was made in response to defense counsel's comments; the prosecutor noted that "[Defense counsel] spoke a few times about his family, his grand kids, and I get that. I think it's normal." As a result, the prosecutor's comment about his family was a fair rebuttal to defense counsel's comment and was thus proper.

¶34        The prosecutor's request that the jurors "consider [their] daughters and granddaughters" was improper. While "[a] prosecutor has wide latitude in presenting arguments to the jury, . . . [he] cannot make arguments that appeal to the fears or passions of the jury." *State v. Morris*, 215 Ariz. 324, 337 ¶ 58 (2007). By telling the jurors to consider their daughters and granddaughters, the prosecutor improperly appealed to their fears and passions.

¶35        This statement, however, was harmless. First, the trial court instructed the jurors that the lawyers' statements in closing argument were not evidence, and we presume that the jurors followed that instruction. *See State v. Newell*, 212 Ariz. 389, 403 ¶ 68 (2006). Second, defense counsel's objection was sustained. Third, Sutter's counsel did not move to strike the comment. And while no jury instruction immediately followed the sustained objection, the court instructed the jurors at the end of the trial that if the court sustained an objection, they were to disregard the statement. We also presume that the jurors followed that instruction. *See id.* at ¶ 69.

### 5. Motion to Vacate Judgment

¶36        Sutter argues that the trial court erred by denying his motion to vacate the judgment. This Court lacks jurisdiction to consider Sutter's arguments for two reasons. First, Sutter did not appeal the trial court's denial of his motion to vacate the judgment. *See* Ariz. R. Crim. P. 31.2(c)(1); ("A notice of appeal or cross-appeal must identify the order, judgment, or sentence that is being appealed."). Second, this Court lacks jurisdiction because the trial court lacked jurisdiction to consider Sutter's motion to vacate the judgment. *See Ex parte Coone*, 67 Ariz. 299, 304 (1948); *see also Webb v. Charles*, 125 Ariz. 558, 565 (App. 1980) ("[W]hen jurisdiction is lacking in the trial court, it is lacking on appeal."). The trial court lacked jurisdiction to consider Sutter's motion because he moved to vacate the judgment on May 24, 2019, before sentencing was held on May 31, 2019. *See State v. Saenz*, 197 Ariz. 487, 489 ¶ 6 (App. 2000) (moving to vacate a judgment before the court has entered judgment and sentence, is premature and cannot proceed); *see also* Ariz. R. Crim. P. 24.2(b) (requiring that a motion to vacate judgment be filed "no later than 60 days *after the entry of judgment and sentence*") (emphasis added).[4]

---

[4]        Sutter also argued that the trial court abused its discretion by denying his motion for a new trial for the same reasons he raised on direct appeal. Because we address those issues above and find no reversible error,

## CONCLUSION

¶37      For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

the trial court did not abuse its discretion by denying Sutter's motion for a new trial.